**Bernard SALERA and the United States Labor Party**

v.

**C. Dolores TUCKER, Secretary of the Commonwealth of Pennsylvania, et al.**

**Thomas E. WELSH, Individually and on behalf of a class of registered voters of Pennsylvania, et al.**

v.

**C. Delores TUCKER, Secretary of the Commonwealth of Pennsylvania, et al.**

**Civ. A. Nos. 74-2340, 74-2353.**

United States District Court, E. D. Pennsylvania.

July 31, 1975.

Amended Order Aug. 16, 1975.

David Saul Heller, Jay C. Carlisle, II, New York City, for Salera.

Melvin Shuster, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., Michael Menkin and Cecil Maidman, Deputy Attys. Gen., Philadelphia, Pa., for Tucker.

Nicholas Panarella, Jr., Asst. City Sol., Philadelphia, Pa., for Bd. of Elections of Philadelphia.

Robert T. Burke, Bristol, Pa., for Bd. of Elections of Bucks.

George T. Kelton, Bristol, Pa., Ivan J. Krouk, Philadelphia, Pa., for intervenor defendant in No. 74–2353.

Larrick B. Stapleton, Philadelphia, Pa., for intervenor defendant in No. 74–2340.

### MEMORANDUM AND ORDER

Before ADAMS, Circuit Judge, and HUYETT and NEWCOMER, District Judges.

NEWCOMER, District Judge.

Plaintiffs in *Salera et al v. Tucker et al*, Civil Action No. 74–2340, are the United States Labor Party and Bernard Salera, a Labor Party candidate for U. S. Congressman in the November, 1974 election and for Philadelphia City Councilman in the upcoming November election. Plaintiffs in *Welsh et al v. Tucker et al*, Civil Action No. 74–2353, are the Consumer Party, Max Weiner, a registered voter in the City and County of Philadelphia who has in the past been a candidate of the Consumer Party for various political offices, and Thomas E. Welsh, a registered voter of Pennsylvania's Sixth Senatorial District who sought nomination as an independent candidate for State Senator from the District in the 1974 elections. Both the Labor Party and the Consumer Party are classified as "political bodies" by Pennsylvania law,[1] which means that

Gregory M. Harvey, Philadelphia, Pa., for plaintiffs in No. 74–2353.

[1]. Pennsylvania classifies every political organization which may nominate candidates for elective office into two categories: political parties and political bodies. 25 Pur-

their candidates may only appear on the ballot through nomination papers signed by a certain number of the registered voters in the district where the candidates seek election. Pennsylvania requires that these signatures be collected in a three week period beginning the tenth Wednesday before the primary and ending the seventh Wednesday prior to the primary. 25 P.S. §§ 2913(b) and (c). This means that a political body may begin gathering signatures on nomination papers 239 days before the general election (265 days in a presidential election year) and must file these papers no later than 218 days before the general election (244 days in a presidential election year).[2] The nomination papers filed on behalf of the candidate plaintiffs for the November, 1974 election were challenged in the state courts on the grounds that they were filed after this statutory period had terminated. Throughout the challenge proceedings plaintiffs asserted that the statutory deadline had been found unconstitutional by two lower federal courts,[3] and that these courts had established a new filing date of August 14, which was to govern the filing of nomination papers until the state legislature created a new filing date. The state court struck the plaintiff candidates' nomination papers solely because of their untimeliness under § 2913(c) and plaintiffs sought relief in this Court. Between the time plaintiffs filed their complaints and the time their cases were heard, a three-judge court in the Middle District of Pennsylvania, the same district in which Pennsylvania's filing deadline was first found unconstitutional, declared that the earlier deci-

sion was no longer valid and that the statutory deadline was constitutional. *Williams v. Tucker*, 382 F.Supp. 381 (M.D.Pa.1974). Upon a showing that plaintiffs had relied on the earlier decisions establishing the August 14 date as well as on statements by employees of defendant Tucker confirming that date, we ordered that plaintiffs and others similarly situated should appear on the ballot if their nomination petitions were filed by August 14, 1974 and were otherwise in order. Consideration of the merits of plaintiffs' constitutional claims was postponed pending the 1974 elections.

A hearing on the merits was held on February 11, 1975. Plaintiffs maintained that the time requirements of 25 P.S. § 2913(b) and § 2913(c) substantially and unconstitutionally burden their access to the ballot. Specifically, plaintiffs challenged the three week time period provided by these sections as too short and too remote from the general election to allow small parties to gather the necessary signatures without imposing undue hardship on their members, candidates and canvassers. In addition, the *Welsh* plaintiffs contended that the provision of the Pennsylvania Election Code giving primary candidates three weeks in which to gather the requisite signatures for primary nomination petitions while requiring that independent candidates gather a greater number of signatures within the same time frame violates the Equal Protection Clause of the Fourteenth Amendment. In lieu of offering testimony at the hearing, the parties stipulated as to what certain plaintiffs' witnesses would state if called

---

don's Statutes § 2831. A political party is an organization which has polled a sufficiently large number of votes at the preceding general election to entitle it to nominate all its candidates through primary elections. A political body is an organization which has not polled the requisite number of votes at the preceding general election; a political body nominates its candidates through signed nomination papers rather than through primaries.

2. Pennsylvania holds its primary on the third Tuesday in May preceding each general election, except for those years when a President of the United States is nominated, when it is held on the fourth Tuesday of April.

3. *People's Party v. Tucker*, 347 F.Supp. 1 (M.D.Pa.1972) (three-judge court); *Consumer Party v. Tucker*, 364 F.Supp. 594 (E.D.Pa.1973) (single judge court).

to testify. The stipulated testimony concentrated primarily on the difficulties encountered in collecting signatures so far in advance of the general election and in the time span alloted by § 2913(b) and (c).

■ Before we can address the constitutional questions we must be sure that we are still confronted with a live controversy. It is axiomatic that the federal courts will not accept jurisdiction over a controversy which is moot. Before accepting jurisdiction a federal court must be assured that it is not being called upon to decide questions "that cannot affect the rights of litigants in the case before [it]". *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Defendants herein assert that the *Salera* matter is moot because the request for injunctive relief in that case was restricted to the past election.[4]

Any discussion of mootness properly begins with a recognition of the Supreme Court's treatment of that issue in the context of constitutional challenges to state election laws. In *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), the Court stated that plaintiffs' declaratory judgment action against a primary registration requirement was properly heard by the lower court even though plaintiffs had qualified to vote in succeeding primaries. In *Storer v. Brown,* 415 U.S. 724, 94 S. Ct. 1274, 39 L.Ed.2d 714 (1974), the Court held that plaintiffs could maintain their suit to have certain state ballot restrictions declared unconstitutional even though the election in which plaintiffs

sought to appear on the ballot was long past and that "no effective relief can be provided to the candidates or voters . . . " 415 U.S. at 737, 94 S.Ct. at 1282, 39 L.Ed.2d at 727, fn. 8. The Court stated:

". . . [T]his case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied to future elections. This is, therefore, a case where the controversy is 'capable of repetition, yet evading review' [citations omitted]. The 'capable of repetition yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks. The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held." 415 U.S. at 737, 94 S.Ct. at 1282, 39 L.Ed.2d at 727–728, fn. 8.

■ The above quoted language would remove all questions of mootness except for the failure of the *Salera* plaintiffs to unequivocally request declaratory relief. The Court seems willing to hear cases where injunctive relief is no longer appropriate because declaratory relief will "have the effect of simplifying future challenges"; where, however, declaratory relief is not sought this reasoning may not apply. A fair

---

4. The Welsh matter has been certified as a class action pursuant to Federal Rule 23(b)(2), which would indicate that it will continue to affect the interests of the parties to the suit. *Defunis v. Odegaard,* 416 U.S. 312, 314, 94 S.Ct. 1704, 40 L.Ed.2d 164, 169 (1974). Plaintiff Max Weiner has been certified as the class representative of those qualified and duly registered voters who wish in the future to consider candidates on the ballot representing policies and programs of the Consumer Party and other political

bodies, as well as the class of persons intending in the future to be such candidates. Plaintiff Consumer Party has been certified as the representative of the class of political bodies intending in the future to support such candidates. There being no evidence that plaintiff Welsh intends to seek independent nominations in the future, or intends to vote for independent candidates, or intends to represent a class of such candidates or voters, the complaint of plaintiff Welsh will be dismissed as moot.

reading of their complaint leads to the conclusion that they not only sought injunctive relief for the 1974 election but for subsequent elections as well. Moreover, there is evidence that both the U. S. Labor Party and plaintiff Salera himself are actively seeking access to the ballot for the November, 1975 local election. The combination of the scope of plaintiffs' prayer for relief and their involvement in a post-1974 campaign is persuasive that this suit will achieve the goals set out in *Storer, supra,* and is thus not moot.

The Supreme Court has identified the individual, party, and state interests involved when the state restricts voting, registration, or access to the ballot. In *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the Court held that Ohio's ballot qualifications, which were so onerous as to make it "virtually impossible" for independent parties to qualify, 393 U.S. at 24, 89 S.Ct. 5, violated the Equal Protection Clause of the Fourteenth Amendment. According to the Court, these ballot restrictions burdened "two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." 393 U.S. at 30, 89 S.Ct. at 10. The Court recognized substantial state interests in encouraging compromise and political stability, in attempting to ensure that the election winner will represent a majority of the community, and in providing the electorate with an understandable ballot, but reasoned that these objectives could be achieved by less restrictive means than the challenged limitations. 393 U.S. 23, 32–33, 89 S.Ct. 5.

The Court has had numerous occasions since *Williams* to examine the interrelation of these and other interests. In *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the Court struck down a New York statute limiting the franchise in School Board elections to those who either owned (or leased) real property or were parents of school-age children. The Court, assuming *arguendo* the legitimacy of a state interest in limiting the vote to those "primarily affected" by School Board affairs, stated that the statute was not "sufficiently tailored" to achieve this interest. 395 U.S. at 632–633, 89 S.Ct. 1886. In *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the Court deemed unconstitutional Texas' requirement that primary candidates pay a registration fee proportionate to the salary paid to the office which the candidate sought. These fees, the stated purpose of which was to finance the primary elections, ranged from $150 for a State Representative representing a sparsely populated district to $1,000 for a U. S. Senator. 405 U.S. 134, 139, 92 S.Ct. 849, 31 L.Ed.2d 92. The Court stated:

> "Without making light of the State's interest in husbanding its revenues, we fail to see such an element of necessity in the State's present means of financing primaries as to justify the resulting incursion on the prerogatives of voters." 405 U.S. at 149, 92 S.Ct. at 858.

In *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Court, again imposing the "strict scrutiny" test of *Williams, Kramer,* and *Bullock,*[5] *supra,* invalidated Tennessee's one-year residency requirement for voting.

---

5. In *Bullock* the Court stated that the existence of barriers to candidate access to the ballot "does not of itself compel close scrutiny", 405 U.S. at 143, 92 S.Ct. at 856, because their "initial and direct impact . . . is felt by aspirants for office, rather than voters, and the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review." 405 U.S. at 142–143, 92 S.Ct. at 855. Nevertheless, the Court closely scrutinized the candidate filing fees involved in Bullock because of their "real and appreciable impact on the exercise of the franchise . . ." 405 U.S. at 144, 92 S.Ct. at 856.

These cases do not stand for the proposition that any state statute which burdens the right to vote or a candidate's access to the ballot is unconstitutional. As the Court stated in *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714, 723:

" . . . [T]he States have evolved comprehensive . . . election codes regulating in most substantial ways . . . the time, place, and manner of holding primary and general elections, the registration and qualifications of voters and the selection and qualification of candidates.

It is very unlikely that all or even a large portion of the state election laws would fail to pass muster under our cases . . ."

Indeed, the Court has upheld statutes which substantially restrict the rights of candidates and voters, including a state's requirement that voters who intend to vote in a party primary register 8 months before that primary in a presidential year and 11 months before it in a non-presidential year, *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), and a statute barring any person with a registered affiliation with a qualified political party [6] within 12 months of a primary election from seeking nomination as an independent candidate in the general election following the primary.[7] *Storer, supra.* Whether the restrictions challenged herein fail to pass muster under the Court's standard is "very much a 'matter of degree' [citation omitted], very much a matter of 'consider[ing] the facts and circumstances behind the law, the interest which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.' [citations omitted]." *Storer, su-*

*pra,* at 730, 94 S.Ct. at 1279, 39 L.Ed.2d at 723–724.

The sections of Pennsylvania's election code under attack here are found at 25 Purdon's Statutes § 2913(b) and § 2913(c). The first of these sections, § 2913(b), fixes the tenth Wednesday before the primary election as the date when nomination papers may first be circulated for signature. § 2913(b) states:

"No nomination paper shall be circulated prior to the tenth Wednesday prior to the primary, and no signature shall be counted unless it bears a date affixed not earlier than the tenth Wednesday prior to the primary nor later than the seventh Wednesday prior to the primary."

§ 2913(c) provides that these petitions must be submitted seven weeks before the primary election. In its entirety, that section reads:

"All nomination papers must be filed on or before the seventh Wednesday prior to the primary."

■ Read together, these sections establish a three-week signature gathering period ending 218 days before the general election.[8] Plaintiffs Labor Party, Consumer Party, Bernard Salera, and Max Weiner claim that the shortness of this period, as well as its remoteness from the general election, substantially burdens their ability to gain access to the ballot and thus infringes their First Amendment rights of free association. Plaintiff Weiner claims that the burdens placed on the party and candidate plaintiffs undermine the effectiveness of his right to vote by unduly limiting potential candidates, including the candidate for whom he desired to vote. The right to vote has repeatedly been recognized as "a fundamental political right, be-

---

6. A qualified political party in this context is a political party which nominates its candidates by primaries.

7. Since in California the primary election precedes the general election by five months, the statute effectively barred the indepen-

dent candidacy of anyone who had a registered affiliation with a qualified political party within 17 months of the general election.

8. This deadline occurs 244 days before election day in a presidential election year.

cause preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S. Ct. 1064, 1071, 30 L.Ed. 220 (1886). If these electoral regulations burden the exercise of these rights, or at least [9] if they have a "real and appreciable impact" on plaintiff Weiner's right to vote effectively, *Bullock,* supra, 405 U.S. at 144, 92 S.Ct. 849, they must be "closely scrutinized", and "found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." *Bullock, supra,* at 144, 92 S.Ct. at 856.

As for plaintiffs' claim that Pennsylvania's petition gathering period is unconstitutionally brief, the Supreme Court has suggested that a comparable time period, while constituting a substantial restriction on access to the ballot, is constitutional. In *Storer v. Brown, supra,* the Court was faced with a challenge to California's requirement that an independent Presidential candidate gather, within a 24 day period, nomination petitions signed by no less than 5% and no more than 6% of the total number of votes in the last general election. The Court remanded for a determination of whether the disqualification of those who voted in the primary reduced the number of persons eligible to sign nomination petitions to such an extent that the 5–6% percentage requirement would in fact be higher. In so doing, the Court stated:

" . . . Standing alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden. Signatures at the rate of 13,820 per day would be required, but 1,000 canvassers could perform the task if each gathered 14 signers a day. On its face, the statute would not appear to require an impractical undertaking for one who desires to be a candidate for President. But it is a substantial requirement; and if the additional likelihood is, as it seems to us to be, that the total signatures re-

quired will amount to a substantially higher percentage of the available pool than the 5% stipulated in the statute, the constitutional claim asserted by [plaintiff] is not frivolous. Before the claim is finally dismissed, it should be determined whether the available pool is so diminished in size by the disqualification of those who voted in the primary that the 325,-000-signature requirement, to be satisfied in 24 days, is too great a burden on the independent candidate for the office of President." 415 U.S. at 740, 94 S.Ct. at 1284, 39 L.Ed.2d at 729.

A three-judge court has relied on this language in deciding that *People's Party v. Tucker, supra,* fn. 3. and *Consumer Party v. Tucker, supra,* fn. 3., erroneously concluded that the three week period set by § 2913(b) and § 2913(c) was unconstitutionally short. *Williams v. Tucker,* 382 F.Supp. 386 (M.D.Pa.1974). The *Williams* Court declared:

"If it is constitutional to require a presidential candidate to obtain 325,000 signatures in 24 days, *a fortiori* it is constitutional to require a presidential candidate to obtain 35,000 signatures [the signature requirement imposed on an independent presidential candidate in Pennsylvania] in 21 days." 382 F.Supp. at 386.

The *Williams* Court went on to say that the fact that the pool of voters eligible to sign nomination papers was substantially larger in Pennsylvania than in California made it clear that the time limits of § 2913(b) and § 2913(c) were constitutional.

■ Although it is true the Supreme Court's discussion in *Storer* occurred in the context of a presidential election, while we are presently faced with putative candidates in less-than-statewide elections, we nevertheless conclude that the three week period is constitutional as applied to plaintiffs. Plaintiffs presented no evidence that the three-week period imposes a greater burden on

---

9. See fn. 5, *supra.*

them than it does on an independent candidate for President, nor have they advanced any reason to distinguish Pennsylvania's statutory time period from the one discussed favorably in *Storer*. In the absence of any such evidence or distinguishing characteristics our conclusion that Pennsylvania's three week-time period for gathering signatures on nominating petitions is constitutionally valid seems compelled by *Storer*.

Plaintiffs also argue that the three week limitation violates the Equal Protection Clause because Pennsylvania allows primary candidates a similar 21 day period to gather signatures on primary nomination petitions while requiring these candidates to gather fewer signatures than independent candidates. In order to appear on the primary ballot a would-be candidate must gather a certain number of signatures on nomination petitions. The exact number of signatures required varies according to the office the candidate is seeking, but in no case does it exceed 1,000 signatures. Independent candidates, on the other hand, must obtain signatures equivalent to 2% of the largest entire vote cast for any election candidate in the preceding state-wide election. 25 P.S. § 2911(b). (The requirement for a state-wide independent candidacy by nomination papers is approximately 35,000 valid signatures; the requirement for an independent candidate in Philadelphia is between 4,000 and 8,000 valid signatures.)

██ Indisputably, an independent candidate must receive more signatures in the same time than a primary candidate. However, this distinction does not appear unreasonable since obtaining the necessary valid signatures will assure an independent candidate a place on the final ballot, while meeting the nomination petition requirement will only assure a party candidate a place on the primary ballot, one step removed from the final ballot. We decline to invalidate the 21 day signature gathering period for nomination papers on this basis.

The second half of plaintiffs' challenge to § 2913(b) and § 2913(c)—that the period for gathering signatures on nominating petitions is so remote from the general election that it substantially impairs plaintiffs' ability to appear on the ballot or to vote for otherwise qualified candidates—raises different issues than were raised by plaintiffs' challenge to the three-week limitation. In *Storer* the three week signature gathering period terminated only 60 days before the general election (and 90 days after the primary); in the present case, it ends 218 days before the general election (and 49 days before the primary). There is no question that cutting off signature gathering 218 days before the general election substantially burdens the ability of independent candidates to gain access to the ballot. It forces these candidates to gather signatures before the issues of the upcoming election have been defined. It forces them to complete their signature gathering process in a political vacuum, seven weeks before the major parties choose their candidates and only two weeks after the deadline for filing as a candidate in the primary election. Scheduling the three week period at such an early date makes plaintiffs' task of generating interest among potential voters or potential canvassers more difficult than it would be if the three week period were scheduled at a point closer to the general election. In addition, it was stipulated that Max Weiner, a past candidate of the Consumer Party, would have testified, if called, that adverse weather conditions generally prevailing during the statutory time period complicate the signature gathering process.

██ Plaintiffs have shown that the remoteness of the signature gathering period from the general election substantially impairs the ability of plaintiffs' candidates to qualify as eligible independent candidates, and so threatens to keep off the ballot candidates for whom eligible voters wish to cast their vote, thereby creating a "real and appre-

ciable impact on the exercise of the franchise . . ., *Bullock, supra,* 405 U.S. at 144, 92 S.Ct. at 856. We must therefore closely examine the scheduling of Pennsylvania's signature gathering period in order to determine whether its present dates are necessary to accomplish some compelling state interest.

■ There are three state interests arguably served by holding the nomination paper circulation period as far in advance of the general election as does Pennsylvania. One possible interest would be the need for sufficient time to resolve any challenges to the nomination papers and to prepare the ballots in a deliberate and orderly fashion. However, the evidence reveals that the Commonwealth of Pennsylvania does not begin to print the ballots until the latter part of September, no more than one and one-half months before the general election, and that a candidate's name can be added to or removed from the ballots in late September without more than minor inconvenience.

■ A second possible interest is the state's concern that defeated or disaffected primary candidates not use the independent nomination process to thwart the will of the party majority, or to wreak vengeance upon the candidate chosen by the party majority. This interest was recognized by the Court in *Storer* as sufficiently compelling to justify an outright prohibition against the independent candidacy of any person who had been registered with a qualified political party within seventeen months of the general election in question. By closing the nomination paper process before the primary election, § 2913(b) and (c) preclude any primary candidates from running in the general election as independents.

However, even assuming that it is the purpose of § 2913(b) and (c) to separate the primary election route to the ballot from the independent route, these sections reach further than is necessary to accomplish this purpose. These sections not only prevent any defeated or dissident primary candidates from gaining access to the ballots as independents, but make it difficult for all independents to get on the ballot, regardless of any association with the primary election process. Pennsylvania could easily exclude defeated primary candidates or dissident party members from the independent nomination process without burdening other independent candidates by requiring that an independent candidate file an affidavit that he was not, nor will be, a candidate in the primary election, or, as in *Storer,* that he was not affiliated with any political party within a certain number of months before the filing date for nomination papers. In fact, the Pennsylvania election code requires that independent candidates filed such an affidavit. 25 P.S. § 2911(e)(5). While this section will not prevent primary candidates from running as independents in Pennsylvania if the date for filing nomination papers falls after the primary,[10] it does demonstrate that such a statute is feasible. Given the feasibility of a less restrictive alternative to scheduling the signature gathering period so far in advance of the primary, the justification for this scheduling cannot be found in the state's compelling interest in divorcing the party primary candidate selection process from the independent one.

■ One final possible state interest in the present filing deadline is its interest in the intelligent exercise of the franchise by those voting in the primary. This argument goes as follows:

---

10. 25 P.S. § 2911(e)(5) states in pertinent part:
 "There shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein, stating . . . (5) that his name has not been presented as a candidate by nomina-

tion petitions for any public office to be voted for at the *ensuing* primary election . . . . (emphasis added).
Thus this section would not bar the independent candidacy of a person who had been a candidate in a preceding primary.

a voter in the primary election can cast his vote more knowledgeably and effectively if he knows which independent candidates will or will not be on the final ballot; requiring nomination papers to be filed far in advance of the primary assures that the primary voter will know the identity of the independents that will appear on the ballot; therefore, the state is justified in imposing an early filing date. One problem with this argument is that the primary voter will still not know the identity of a much more significant factor in the general election, i. e., the identity of the other major party candidate. Thus a substantial obstacle to an independent candidate's ability to get on the ballot is justified by reference to what is at best a marginal increase in knowledgeable voting. We believe that this state interest is insufficiently compelling to warrant the burden on independent candidacies which results from the early filing date.

We cannot overlook the fact that a three judge court in this Circuit has expressly declared that § 2913(b) and § 2913(c) are constitutional. *Williams v. Tucker, supra.* We believe that this decision was correct given the facts that were before that court, but we also believe that the factual situation in our case warrants a different conclusion.

The *Williams* court was confronted with a defeated primary candidate who had gathered a sufficient number of signatures to qualify as an independent, but whose nomination papers had been rejected by the state since they had not been gathered within the three week period of § 2913(b) or filed by the date set forth in § 2913(c). In addition, these nomination papers had not been accompanied by an affidavit stating that the affiant was not also submitting primary nomination petitions for the same office, an affidavit which 25 P.S. § 2911(e)(5) requires all persons submitting nomination papers to file. The plaintiff, who had been defeated in his party's 1974 congressional primary elec-

tion, argued that the *People's Party* and *Consumer Party* decisions, *supra,* had extended the time for filing nomination papers until August 14, 1974, and that § 2911(e)(5) was unconstitutional because it prevented a loser in the primary from running as an independent in the general election. The court first found that § 2913(b) and (c) were "inherently involved" in the legal issues raised in the case, 382 F.Supp. at 384, presumably because these sections, if constitutional, prevented plaintiff from filing as an independent after the primary regardless of the validity of § 2911(e)(5). The court declared that the reasoning of *People's Party* and *Consumer Party, supra,* had been undermined by the Supreme Court's validation of California's 24 day signature gathering period in *Storer, supra,* and that therefore § 2913(b) and (c) were constitutional and the August 14 date was no longer in effect. The *Williams* court held that the fact that the filing date of § 2913(c) prevented a losing primary candidate from running as an independent candidate did not violate the constitution, since the Supreme Court in *Storer* had upheld a statutory provision expressly barring defeated primary candidates from the independent nominating process. 382 F.Supp. 381, 387.

In *Williams* the challenge to the constitutionality of § 2913(b) and (c) came from a defeated party candidate. This candidate presented no evidence about the difficulties of gathering sufficient signatures seven weeks before the primary; in fact, he was completely unconcerned with § 2913's effect on bona fide independent associations or candidates. The present case, however, involves interests which were not present nor considered in *Williams.* Plaintiffs herein are precisely those persons whose rights are unnecessarily infringed by the provisions which legitimately barred persons such as Congressman Williams from the ballot, and as applied to these plaintiffs § 2913(c) and § 2913(b), insofar as the latter disqualifies papers signed after

the seventh Wednesday prior to the primary, are unconstitutional.

## ORDER

And now, to wit, this 31st day of July, 1975, upon consideration of the evidence and arguments presented by counsel at a hearing on this matter on February 11th, 1975, and upon consideration of the briefs filed by the parties both at and after that hearing, it is hereby ordered that the defendants, their agents, employees, and servants, are hereby permanently enjoined from enforcing against any of the named plaintiffs in the above captioned actions the provisions of 25 P.S. § 2913(c) or § 2913(b), insofar as the latter section prohibits the counting of a signature on a nomination paper if it bears a date affixed later than the seventh Wednesday prior to the primary to be held in the year in which the nomination paper is circulated.

Defendants, their agents, employees, and servants, are hereby permanently enjoined from printing or otherwise preparing any ballot without the names of the candidate plaintiffs or any candidates offered by plaintiff political bodies if those candidates' nomination papers are filed with defendant Tucker on or before August 21st, 1975 and/or the August 21st of each successive year in which these candidates seek nomination as independents, those nomination papers bear a signature with a date affixed of no later than August 21st, and those nomination papers are otherwise in conformity with the Pennsylvania Election Code. This August 21st date shall remain in effect until the Pennsylvania legislature shall enact a new filing date for nomination papers.

And it is so ordered.

## AMENDED ORDER

And now, to wit, this 6th day of August, 1975, upon consideration of the evidence and arguments presented by counsel at a hearing on this matter on February 11, 1975, and upon considera-tion of the briefs filed by the parties both at and after that hearing, it is hereby ordered that the defendants, their agents, employees, and servants, are hereby permanently enjoined from enforcing against any of the named plaintiffs in the above captioned actions or against any member of the classes which the named plaintiffs Consumer Party and Max Weiner have been certi-fied to represent by this Court's Order of July 31, 1975, to wit, the class of qualified and duly registered voters residing in the Eastern District of Pennsylvania who wish in the future to consider candidates on the ballot representing policies and programs of the Consumer Party and other political bodies; the class of persons residing in the Eastern District of Pennsylvania who intend in the future to be such candidates; and the class of such political bodies located in the Eastern District of Pennsylvania which intend in the future to support such candidates, the provisions of 25 P.S. § 2913(c) or § 2913(b), insofar as the latter section prohibits the counting of a signature on a nomination paper if it bears a date affixed later than the seventh Wednesday prior to the primary to be held in the year in which the nomination paper is circulated.

Defendants, their agents, employees, and servants, are hereby permanently enjoined from printing or otherwise preparing any ballot without the names of the candidate plaintiffs or members of the class of candidates or any candidates offered by plaintiff political bodies or any member of the class of political bodies if those nomination papers for such candidates and political bodies are filed with defendant Tucker or with a Board of Elections for a County within the Eastern District of Pennsylvania, on or before August 21, 1975 and on the August 21st of each successive year in which these candidates seek nomination as independents, those nomination papers bear signatures with dates affixed no later than August 21st, and those

nomination papers are otherwise in conformity with the Pennsylvania Election Code. This August 21st date shall remain in effect until the Pennsylvania legislature shall enact a new filing date for nomination papers.

And it is so ordered.