**In re Caliguiri**

.

2

*Franklyn E. Conflenti* and *John Feeney,* for plaintiff.

*James Joseph* and *Donald S. Hershman,* for defendants.

*Alexander J. Jaffurs, Thomas M. Rutter, Jr.* and *Ronald T. Conway,* for county.

McKENNA, *J.,* September 2, 1977 — This case was initiated on August 23, 1977, by the filing of a petition by the above plaintiffs against the named defendants. The petition asks the court to direct that respondents refrain from printing the name of Richard S. Caliguiri (herein "Caliguiri") on the ballot as a candidate for Mayor of the City of Pittsburgh in the general election scheduled for November 8, 1977, in Allegheny County. A hearing was held on August 29, 1977.

Papers have been filed by "Pittsburghers for Caliguiri," a political body naming Caliguiri as its candidate for Mayor of the City of Pittsburgh in that election.

There are four counts in the petition as follows:

I. Caliguiri did not file nominating petitions prior to the seventh Wednesday preceding the primary election of 1977 (May 17, 1977) as a representative of his political party. He is not a member

of a political body as that term is used in the Pennsylvania Election Code of June 3, 1937, P.L. 1333, as amended, and is thus not entitled to run as the candidate of such a body, and file papers after the date stated above.

II. Caliguiri's nominating papers were filed out of time. The Pennsylvania Election Code requires such papers to be filed on or before the seventh Wednesday prior to the primary, or March 30, 1977. They were not filed until August 1 and August 22, 1977.

III. "Pittsburghers for Caliguiri" is not a bona fide political body and, therefore, is not entitled to the privilege of filing papers after the primary, a privilege which has been extended to bona fide political bodies.

IV. Signatures on the nomination papers were procured prior to July 28, 1977. The Election Code, 25 P.S. §2913, requires that signatures be procured within a three-week period prior to the last day for filing nomination papers, or August 22, 1977.

On August 29, 1977, Caliguiri filed a motion for judgment on the pleadings. He asserts that certain of plaintiffs are not qualified electors of the City of Pittsburgh, that their objections to his candidacy were filed out of time in that they were filed on August 24, 1977, and that the nomination papers being on their face valid, the court is prohibited from making any inquiry into the validity of the political body.

The motion is denied. Section 977 of the code as amended, 25 P.S. §2937, requires that objections to nomination papers must be filed within seven days after the last day for filing. In the case at bar the Secretary of the Commonwealth has set August 22, 1977, as the last day for filing. The objec-

tions to the papers were filed on August 23, 1977, within the time period. Certain of plaintiffs are residents of the City of Pittsburgh. The issues of the case have been properly raised and we will not consider further the standing of the Allegheny County Democratic Committee, nor the right of the residents of Allegheny County who do not reside in Pittsburgh to participate in the suit.

Caliguiri filed an answer to the petition also on August 29, 1977. In this he asserts that "Pittsburghers for Caliguiri" is a bona fide political body as defined in the Pennsylvania Election Code, that, as decided in the case of Salera v. Tucker, 399 F. Supp. 1258 (E. D. Pa. 1975), affirmed by the U.S. Supreme Court at 424 U.S. 959, 96 S. Ct. 1451, 47 L. Ed. 2d 727 (1976), a political body had until August 22, 1977, to file papers nominating its candidate, Caliguiri, to run for the office of mayor of Pittsburgh in the November, 1977, general election; that sufficient signatures were secured within the required three-week period; and that no grounds exist for denying Caliguiri a place on the ballot.

On the same day the County of Allegheny filed a response to the petition admitting the various allegations therein and asserting that the nomination papers filed on behalf of Caliguiri were accepted by the County Board of Elections because they appeared to be regular on their face and the Secretary of the Commonwealth, C. Dolores Tucker, had instructed all boards of election to accept nomination papers for independent candidates on August 21 of each year until the general assembly enacts a new filing deadline. In the case at bar, August 21 being a Sunday, the time is automatically extended to August 22, 1977.

The only issues we will consider in the case are those raised in the first three counts in the petition. Counsel for petitioners agrees that there was no proof to support count IV in his petition to the effect that the signatures obtained on the Caliguiri papers are insufficient.

Before reciting the facts in the case we will state the legal principles to be applied to the instant situation.

Elections in the Commonwealth are governed by the Pennsylvania Election Code of June 3, 1937, P.L. 1333, as amended, 25 P.S. §2600 et seq. Section 801, 25 P.S. §2831, defines certain terms which are pertinent to our discussion. Subparagraph (b) of that section defines a political party as follows:

"(b) Any party or political body, one of whose candidates at either the general or municipal election preceding the primary polled at least five per centum of the largest entire vote cast for any elected candidate . . . is hereby declared to be a political party . . ."

A political body is defined thus:

"(c) Any political body which is not a political party, as hereinabove defined, but which has nominated candidates for such general or municipal election by nomination papers in the manner provided by this act, shall be deemed to be a political body within the meaning of this act, but such political body shall not be entitled to nominate its candidates or elect its party officers at primaries held under the provisions of this act."

The significance of these definitions is that the two groups, that is, political parties and political bodies, nominate their candidates under the code by different procedures. A political party may

nominate candidates at the primary election which is held on the third Tuesday of May (25 P.S. §2754).

Political bodies nominate candidates as provided in section 951, 25 P.S. §2911(b), of the code as amended. This section requires political bodies to nominate by nomination papers. The section provides in part that: ". . . [T]he number of qualified electors of the electoral district signing such nomination papers shall be at least equal to two per centum of the largest entire vote cast for any officer, except a judge . . . elected at the last preceding election in said electoral district for which said nomination papers are to be filed, and shall be not less than the number of signers required for nomination petitions for party candidates for the same office . . ."

Section 912(d) of the code, 25 P.S. §2872(d), provides that a political party may nominate a candidate on petition signed by only one hundred registered and enrolled members of the party. (This is the requirement for the office of Mayor of the City of Pittsburgh. Other numbers are prescribed for other offices.)

Subsection (e) of section 951, 25 P.S. §2911(e), requires that there be appended to each nomination paper offered for filing by a political body, an affidavit of each candidate nominated therein stating:

"1. The election district in which he resides; 2. the name of the office for which he consents to be a candidate; 3. that he is eligible for such office; 4. that he will not knowingly violate any provisions of this act . . . 5. that his name has not been presented as a candidate by nomination petition for any public office to be voted for at the ensuing

primary election, nor has he been nominated by any other nomination papers filed for such office."

Section 953 of the code, 25 P.S. §2913, provides for the place and time of filing nomination papers. In the case at bar it requires that said papers be filed with the County Board of Elections.

Subsections (b) and (c) of section 953 provide that:

"(b) No nomination paper shall be circulated prior to the tenth Wednesday prior to the primary, and no signature shall be counted unless it bears a date affixed not earlier than the tenth Wednesday prior to the primary nor later than the seventh Wednesday prior to the primary. As amended 1963, Aug. 13, P.L. 707 §12.

"(c) All nomination papers must be filed on or before the seventh Wednesday prior to the primary. As amended 1963, P.L. 707, §12, effective Jan. 1, 1964."

In brief, the Pennsylvania legislature requires that one may have his name placed on the ballot as a candidate for office in the general election to be held in November by one of two methods. He may win his party's nomination in the May primary, or, he may be nominated by papers filed by a political body. If the latter route is chosen, the papers must be filed at least seven Wednesdays prior to the date of the primary election. Signatures to the papers must be secured within the 20-day period preceding the last day for filing. Qualified electors equal to at least two per centum of the largest entire vote cast for any officer except a judge must sign the papers. In the case at bar the statutory requirement is that the papers for Mr. Caliguiri had to be filed on or before March 30, 1977. This however is not the end of the case.

The case of Salera and the U.S. Labor Party v. Tucker et al., 399 F. Supp. 1258 (E.D. Pa. 1975), holds that the two per centum requirement is valid as against attack on Constitutional grounds and that the three-week period allowed for gathering signatures is likewise valid. However, the court held that the three-week period was so remote from the date of the general election (it ended 218 days prior to that date) as to place an unconstitutional burden on the United States Labor Party and on Salera, who sought to represent that party as a candidate for U.S. Congress in November, 1974 election. It held that sections 2913(b) and (c) are unconstitutional as applied to Salera. It extended the time for filing to August 21.

## THE TESTIMONY

There was very little testimony taken. The first witness to testify was Mayor Richard S. Caliguiri. He was called as for cross-examination by counsel for petitioners. He is 46 years of age. He has been a registered Democrat for the past 22 years. For the past 21 years he occupied various positions in the City of Pittsburgh. Among other offices which he held was that of assistant director of the Department of Public Works.

In December of 1970, a vacancy occurred in the city council of the City of Pittsburgh. Under the Pittsburgh Charter Law, city council is authorized to fill such a vacancy and Caliguiri was appointed by that body to the council in that month, that is, December of 1970. In the year 1971, there was a councilmanic election. Caliguiri was not endorsed by the party in the Democratic primary for city council. He nevertheless ran as an independent

Democrat and led the ticket, thus winning the Democratic party nomination. He also won the general election in November of that year.

In 1973, Caliguiri ran in the Democratic primary as a candidate for mayor of the City of Pittsburgh. He was endorsed by the Democratic Party of the City of Pittsburgh. However, he lost the primary election to Peter Flaherty, who won the Democratic nomination and the subsequent election in November of 1973.

Caliguiri's term as councilman expired at the end of the year 1975. He ran in the primary election of that year, won the Democratic nomination, and subsequently was reelected to council at the general election in November. The president of city council at that time was Louis Mason. Mr. Mason was in ill health for a considerable period of time in 1976 and Caliguiri acted as president pro tem. Sometime in early 1977, Mason resigned as president of city council and Caliguiri was elected by his fellow councilmen to succeed Mason as president of council.

In the summer of 1976, Caliguiri considered running for the office of mayor of the City of Pittsburgh in 1977. He discussed this possibility with several of his close advisors, solicited funds and had others ask for money to promote his candidacy. He had a poll made to enlighten him as to the possibility of his becoming mayor. Caliguiri said that the poll was favorable to him but that it constituted a very complex operation and gave no simple answers to many questions which were propounded to persons canvassed. The poll was directed to registered Democrats and asked for comparisons only with other Democratic candidates. The results of this poll did influence him in decid-

ing not to seek the office of mayor of the City of Pittsburgh in the May 1977 primary.

There were other considerations involved in his decision. Peter Flaherty had withdrawn from the race, but in November of 1976 he reentered, and Caliguiri did not wish to run against him. Further, he said that he did not have time to create an organization that would have been necessary to enable him to run in that election. On March 8, 1977, he made a public statement to the effect that he would not run in the Democratic primary scheduled for May 17, 1977. Prior to that time, however, his friends had circulated petitions for him and had procured more than the 100 signatures required to qualify one as a candidate in the primary.

In this same period of time, Caliguiri had spoken to his colleagues on city council about either his possible candidacy or his relinquishing his pursuit of the Democratic nomination for mayor in the May primary. There was also discussed the question of his becoming president of city council. It was understood by all members of the council, including Caliguiri, that the president of the city council would not run for mayor in the May primary. The witness said that he did not consider his statement that he would not run in the primary as tantamount to a declaration that he would not be a candidate in the general election.

On April 11, 1977, Peter Flaherty resigned as mayor of Pittsburgh and Caliguiri, by virtue of his office as president of city council, succeeded to that office.

In early June of 1977, Caliguiri considered announcing his candidacy for mayor as an independent in the general election to be held on November 8, 1977. He had not, prior to that time,

considered running as an independent. He and his backers then commissioned a second poll which was taken in the early part of June, 1977. The results of this were made available shortly thereafter. He said that this poll indicated that he could win the election in November. At that time "Pittsburghers for Caliguiri" was formed. He named five persons, all Democrats, to act as the executive committee for the political body. Papers were then circulated and a total of 32,000 names were procured as being in favor of his candidacy in the general election.

Caliguiri said that he voted in the 1977 primary election as a Democrat. He is still so registered. Under the election law one may change his registration at any time.

F. Kenneth Dixon, Director of Elections of Allegheny County, testified for the petitioners. He said that the Secretary of the Commonwealth had notified him to accept nomination papers by independent political bodies up to August 22, 1977. He received the papers for Caliguiri. He testified that 304 persons had circulated the papers. There were two papers filed, one on August 1, 1977, and one on August 22, 1977. The first petition contained 24,899 names and the second 5,597, or a total of 30,496 qualified signatures. The witness said that the papers were regular on their face and were filed within the time limit given to him by the Secretary of the Commonwealth. There were more than a sufficient number of signatures on the papers. Accordingly, he accepted them for filing.

## DISCUSSION

A chronological review of the pertinent cases reveals that:

In Peoples Party v. Tucker, 347 F. Supp. 1 (M.D. Pa. 1972), Peoples Party attempted to gain the required number of signatures within the three-week period prior to the seventh Wednesday preceding the May primary in 1972. The party was not successful and it brought suit in the Middle District of Pennsylvania in the Federal Court asserting that section 953(b) of the code, 25 P.S. §2913(b), is unconstitutional. Judge Muir for the court said:

"The Pennsylvania Election Code is in general an exceptionally well considered statute and the defect complained of here is the first serious flaw in the statute which has come to our attention. We are most reluctant to declare a state act unconstitutional, whether in whole or in part, unless the surrounding circumstances require such a result.

"Where is the compelling necessity that in excess of 35,000 signatures be obtained in Pennsylvania on behalf of a candidate in a three-week period beginning 265 days before the election at which his name appears for the first time thereafter on the ballot?

"We conclude that this three-week period is so short and so remote from the election as to be unreasonable. We have been unable to ascertain any valid purpose to be served by it."

The court held the section unconstitutional. It added: "We anticipate that the Pennsylvania legislature will enact a new and reasonable provision for circulation of nominating papers by political bodies in years subsequent to 1972."

This did not happen.

In Consumer Party and Max Weiner v. Tucker, 364 F. Supp. 594 (E. D. Pa. 1973), the court followed Peoples Party and held that Consumer Party was not bound by the time limitation stated in the

statute, 25 P.S. §2913(b). In that case, plaintiffs sought to enjoin enforcement of 25 P.S. §2913(b). They asked that Mr. Weiner's name be placed on the ballot for the election of November 6, 1973, as a candidate of the Consumer Party for the office of city controller of Philadelphia. The complaint alleges that Consumer Party is an unincorporated association of persons who seek to elect officers pledged to defend and advance the interests of consumers. Plaintiffs allege that section 2913(b) is unlawful, and offends the Constitution of the United States in that, as alleged in Peoples as to subsections (b) and (c), "(a) they are such burdensome and oppressive barriers to placing candidates on the ballot as to violate the right to equal protection under the Fourteenth Amendment . . . (b) they constitute an impermissibly heavy burden on the rights of freedom of speech, petition and association of the plaintiff, in violation of the First Amendment . . . (c) they unduly infringe upon and violate the right to vote of the individual members and the class they represent, in violation of the Fifteenth Amendment . . . (d) no compelling state interest being present, they represent an arbitrary exercise of state power, in violation of the Fourteenth Amendment . . . (e) they constitute an unequal and invidious discrimination as to minor political bodies, in violation of the Equal Protection Clause of the Fourteenth Amendment; and (f) they deny the plaintiff political bodies an equal opportunity to present their program to the electorate and to secure votes, and place an unequal burden on the right of the plaintiffs to form a political party, in violation of the First and Fourteenth Amendments to the Federal Constitution."

The court, after hearing, found in accord with

these averments and declared void the section in question. In so doing it followed Peoples.

In Williams v. Tucker, 382 F. Supp. 381 (M.D. Pa. 1974), Williams was a defeated candidate for Congress in the Republican primary in May 1974. Thereafter, he sought to file as an independent. The Bureau of Elections rejected his papers on the ground that he could not file the affidavit required by section 951(e)(5) of the code, 25 P.S. §2911(e)(5), stating that his name had not been presented as a candidate by nomination petition at the primary election. The court considered that section as well as 25 P.S. §2936(e), which prohibits one from filing as an independent after the primary, if he has filed a nomination petition or been nominated at the primary. The court also discussed 25 P.S. §2913(b) and (c). It found that the rulings in Peoples Party and Consumer Party had been undermined by the decision of the Supreme Court of the United States in Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L. Ed. 2d 714 (1974), which upheld certain limitations in California's Election Code. Accordingly, the Williams' court upheld the validity of 25 P.S. §2913(b) and (c) saying, p. 735: "The state's general policy is to have contending forces within the party employ the primary campaign and primary election to finally settle their differences."

The court also upheld 25 P.S. §2936(e) and 25 P.S. §2911(e)(5).

In Salera and the U.S. Labor Party, 399 F. Supp. 1258 (E.D. Pa. 1975), plaintiff was a candidate of the U.S. Labor Party for a seat in the United States Congress. He sought to file nomination papers after the statutory limitation. The election bureau refused to accept his papers. Plaintiffs appealed to

the court asking it to direct the bureau to accept the papers for the reason that the time limitations in 25 P.S. §2913(b) and (c) are unconstitutional. The court sustained the appeal, holding that the Labor Party was a bona fide political body. The court said:

"Plaintiffs have shown that the remoteness of the signature gathering period from the general election substantially impairs the ability for plaintiffs' candidates to qualify . . . and so threatens to keep off the ballot candidates for whom eligible voters wish to cast their vote."

Accordingly, it held that 25 P.S. §§2913(b) and 2913(c) could not be enforced. The court expressly stated that Williams v. Tucker was correctly decided, even though the decision in that case upheld the validity of 2913(b) and 2913(c), as Williams was a defeated candidate.

In Salera, the court analyzes the grounds to be established by one who seeks to avoid the time limitation in 25 P. S. §2913(b) and (c), and the principles to be established by those who wish it to be strictly applied. The grounds for upholding the statute are:

1. The state has a legitimate concern to prevent defeated or disaffected primary candidates from using the independent nomination process to thwart the will of the party majority or to wreak vengeance on the candidate chosen by the majority.

2. The need for sufficient time to resolve challenges to nomination papers and to prepare the ballots.

3. The state's interest in the intelligent exercise of the franchise by the voters. Here, the assumption is that the voter will vote more intelligently in

the primary if he knows the identity of the independent candidates.

The court accepted as valid only the first ground stated.

The reasons for invalidating the time limitation are that it substantially burdens the ability of independent candidates to gain access to the ballot; and threatens to keep off the ballot candidates for whom eligible voters wish to cast their vote thereby creating a real and appreciable impact on the exercise of the franchise. The court found the reasons for applying the limitation to be inapplicable and it ordered that Salera's name be printed on the ballot for use in the general election.

In Bucks Co., Dem. Party v. Tracy, 27 Bucks 222 (1975), appeal dismissed by Pa. Supreme Court on October 22, 1975, the Bucks County Court had before it a case involving our question. Tracy, an incumbent county commissioner, filed nomination papers on March 10, 1975, for nomination in the primary election to be held on May 20, 1975. However, he was not endorsed for the office by his party, so he withdrew from the race on March 18, 1975. He then filed papers for nomination as an independent candidate on August 21, 1975. Judge Satterthwaite followed Williams v. Tucker and found that Salera was not controlling on the facts there presented. He held that there is a distinction between true independents who enjoy the privilege of late filing "and dissident party members to whom the time limitation will apply." The court found that Tracy was a dissident Democrat and was not entitled to have his name on the ballot.

In Baronett v. Tucker, 26 Pa. Commonwealth

Ct. 559, 365 A.2d 179 (1976), Baronett was an unsuccessful candidate in the spring Democratic primary for representative to the general assembly. On June 14, 1976, after the primary, he submitted nomination papers to have his name placed on the ballot as the nominee of the Federalist body. The Election Board refused to accept his papers on the ground that section 976(e) of the code, 25 P.S. §2936(e), provides that no nomination paper shall be permitted after the candidate named therein has filed a nomination petition for the ensuing primary. The court said in the course of its opinion:

"It is true, of course, that the time requirement of Section 953(c), specifically establishing the seventh Wednesday prior to the primary as the last day on which nomination papers may be filed, has been struck down as an unconstitutional infringement on the rights of independent candidates. Salera v. Tucker, . . . It is also true that, as a result of the Salera, supra, holding, which permits the nomination papers of independent candidates to be filed anytime before August 21, Baronett's nomination papers were timely."

This case is factually the same as Williams, but in Baronett the court barred the candidate because he could not sign the required affidavit. It recognized that 25 P.S. §2913(b) and (c) are void, even as to a defeated candidate.

The final case we will refer to is Marvin Mandel, Governor of Maryland, v. Bruce Bradley, 45 L.W. 4701, decided June 16, 1977. In that case Bradley decided in the spring of 1975 to run as an independent candidate for the U.S. Senate from Maryland in the 1976 elections. Under the provisions of the Maryland Election Code, a candidate for statewide or Federal office may qualify for a position on

the general election ballot as an independent by filing, 70 days before the date on which the primaries are held, nominating petitions signed by at least three percent of the State's registered voters, and a certificate of candidacy. Bradley was unsuccessful in securing the required signatures within the time allowed. He filed suit alleging that the Maryland Election Code in stating the requirements for independents constituted an unconstitutional infringement of their association and voting rights under the first and fourteenth amendments. A lower court held that the statute was an unconstitutional burden on an independent candidate's access to the ballot, and gave Bradley 53 days after the primary to gather the required number of signatures. The lower court based its holding on the summary affirmance by the Supreme Court of Tucker v. Salera, 424 U.S. 959 (1976), affirming 399 F. Supp. 1258 (E.D. Pa. 1975). The Supreme Court found that the lower court had given undue weight to Salera, saying:

"Summary affirmances and dismissals of want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions. After Salera, for example, other courts were not free to conclude that the Pennsylvania provision invalidated was nevertheless constitutional. Summary actions, however, including Salera, should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved."

The "facts" the court is referring to are those in the statute which create difficulties, or burdens in gaining access to the ballot, and not to the philosophy or the bona fides of the political body involved.

The Supreme Court vacated the judgment and remanded the case to permit findings with respect to the extent of the burden which the Maryland statute casts upon candidates.

## ANALYSIS OF THE CASES

Our review of the record and the pertinent authorities which have been cited lead to the conclusion that "Pittsburgers for Caliguiri" is entitled to have the name of its candidate placed on the November ballot.

We have before us an important question and a close one, but the weight of the authorities mandates our decision. This was reached on the basis of the Salera, Baronett and Mandel decisions. Salera declared 25 P.S. §§2913(b) and 2913(c) unconstitutional and void. Its recognition of Williams as good law may be considered as dicta. In any event, Caliguiri does not fall within the Williams ruling as Williams was a defeated candidate and Caliguiri took no part in the primary election of May 17, 1977. Mandel then upheld Salera. Our conclusion comports with the seemingly casual statement made by the United States Supreme Court that: "After Salera, for example, other courts are not free to conclude that the Pennsylvania provision invalidated was nevertheless constitutional."

Finally, Baronett, decided October 14, 1976, concludes that section 2913(b) and 2913(c) are void without qualification, even as to a factual situation similar to that presented in Williams.

Our decision too avoids the problem of examining into the validity of the political party known as "Pittsburghers for Caliguiri." The Allegheny County election board has accepted its papers as being valid. We could not determine that it is or is not a bona fide party without examining into its philosophy. This is frowned upon by the courts. See Independence Party Nomination, 208 Pa. 108, 57 Atl. 344 (1904). Also, in Packrall v. Quail, 411 Pa. 555, 192 A.2d 704 (1963), the court in footnote 7, p. 558, said:

"Appellees also assert that the 'Good Government Party' does not represent a political philosophy but is merely a mechanism to further the political ambitions of Packrall. Suffice it to say that the Pennsylvania Election Code does not contemplate a judicial investigation into the political philosophy of political bodies so long as their purpose is not the forceful overthrow of the government."

Plaintiffs point to the following facts which may offend one's sense of fair play. Caliguiri has been a Democrat all his life. He had various positions in the government of the City of Pittsburgh and finally reached high office at a relatively early age. He was nominated and elected to city council. He became president of council pro tem during the illness of Mr. Mason. After Mr. Mason's retirement he was elected president of city council. This was done on the understanding that the president of city council, whoever he might have been, would not become a candidate for mayor at the primary election in 1977. Mayor Flaherty resigned the mayoralty chair on April 11, 1977, and Caliguiri, as president of council, succeeded him in that office by virtue of the provisions of the city charter. As he became mayor, he obviously became better known

to the public. He commissioned a second poll and found that there was real sentiment for his continuance in office and he then decided to run as an independent candidate. It is obvious that when the Democratic party received from Caliguiri word that he was not going to run for mayor in the primary, it assumed that he would not run in the general election. Caliguiri spent no money in the primary election whereas those who did run spent upwards of $100,000 in some cases, on their campaigns. Caliguiri has the chance of running as an incumbent. This advantage would not have been given to him had the Democratic leaders realized that his statement that he would not run for mayor was confined to the primary election in 1977.

Notwithstanding these considerations, we find that we have no power to prevent "Pittsburghers for Caliguiri" from placing their candidate's name on the November ballot. The Supreme Court of the United States has in effect directed us to take this action. It has stated that section 2913(b) and 2913(c) of 25 P. S. are unconstitutional. For us to say that these sections are valid as applied to Caliguiri, would be a course of action which a lower court is not permitted to take.

Our decision goes back to Peoples Party decided June 7, 1972. This held that the three-week period for gathering signatures by an independent candidate or body was so remote from the election as to be unreasonable. The court added that: "We anticipate that the Pennsylvania legislature will enact a new and reasonable provision for circulation of nominating papers by political bodies."

The legislature has failed to do this.

This court cannot legislate. The legislature might also have enacted a disaffiliation statute

forbidding a candidate who has been a registered member of a political party for one year from running as an independent. There is no such statute in Pennsylvania and, of course, this court may not engraft such a qualification on the election laws. In short, there is no legal obstacle to Caliguiri's candidacy.

A further consideration herein is that our decision merely allows a contest between Caliguiri and the Democratic nominee in the general election. It does not make him mayor of the City of Pittsburgh. In a close case, free access to the ballot should be allowed.

The Democratic Party presented formidable arguments. It maintained that Salera while holding section 2913(b) and (c) unconstitutional as to bona fide political bodies, recognized the Williams case which upheld the time limitation in the case of a defeated candidate. Further, Tracy expanded the Williams doctrine and applied the limitation to one who was not a defeated candidate but who had filed nomination papers in the primary and then withdrew same. Tracy was affirmed by the Supreme Court of Pennsylvania on October 22, 1975. The argument of plaintiffs is that Salera recognized that sections 2913(b) and 2913(c) are unconstitutional only as to bona fide political bodies, and are viable as to spurious political bodies. The Supreme Court in Mandel affirmed this ruling and by its language quoted above meant that other courts are not free to conclude that the Pennsylvania provision invalidated is constitutional *as applied to bona fide political bodies*. While there is certainly merit to this argument we have chosen the other conclusion for the reasons above stated.

An order will be drawn in accordance with this opinion.

## ORDER OF COURT

Now, September 2, 1977, on consideration of petition filed herein asking this court to declare null and void nomination paper filed on behalf of Richard S. Caliguiri, as candidate for mayor of the City of Pittsburgh, and after consideration of further pleadings filed, hearing held and review of arguments made, it is ordered and decreed that said petition be and it is hereby dismissed.

F. Kenneth Dixon, director of the department of elections of the County of Allegheny, is directed to place on the ballot for the general election to be held November 8, 1977, the name of Richard S. Caliguiri as a candidate for mayor of the City of Pittsburgh.

It is further ordered and decreed that defendants Flaherty, Peirce and the county board of elections are directed to certify the nomination papers of the said Richard S. Caliguiri as a candidate for said office.

## ORDER OF COURT

Now, September 2, 1977, on consideration of motion for judgment on the pleadings filed herein, it is ordered and decreed that said motion be and it is hereby denied.