**Don B. PRATT, Plaintiff,**

v.

**Leila BEGLEY, Secretary of State of Kentucky, and Charles E. Baesler, Jr., County Clerk of Fayette County as representative of the County Clerks of the 21 counties comprising the Sixth Congressional District of Kentucky, Defendants,**

**Luther J. Wilson, Intervenor.**

**Civ. A. No. 360.**

United States District Court,
E. D. Kentucky,
Frankfort Division.

Oct. 7, 1970.

Dissenting Opinion Oct. 9, 1970.

Robert A. Sedler, Lexington, Ky., for plaintiff.

William H. Allison, Louisville, Ky., for intervenor.

George E. Barker, Lexington, Ky., for Baesler.

Walter Herdman, Asst. Atty. Gen., Frankfort, Ky., for Begley.

## MEMORANDUM.

Before BROOKS, Circuit Judge, GORDON, Chief District Judge, and SWINFORD, District Judge.

SWINFORD, District Judge.

Plaintiff, Don B. Pratt, has invoked jurisdiction of this court under Title 28, U.S.C., Sections 1331(a), 1343(3), (4), 2201, 2202, Title 42 U.S.C., Section 1983 and under the Constitution of the United States. It is alleged that Kentucky Revised Statute 118.130 is violative of the First and Fourteenth Amendments of the Constitution.

Plaintiff is a potential candidate from the Sixth Congressional District of Kentucky for the United States House of Representatives. He desires to seek this office as an independent candidate unaffiliated with any national political party.

On August 12, 1970, plaintiff presented his nominating petition to an employee of the office of the Secretary of State of Kentucky. The petition was not accepted and plaintiff was advised that it could not be filed on that date in accordance with the provisions of Kentucky Revised Statute 118.130(3) which states that:

"... petitions and certificates of nomination ... shall be filed not less than fifty-five (55) days before the day fixed by law for the holding of the primary elections."

The primary election had been held on May 26, 1970. A petition for nomination must therefore have been tendered, in accordance with the above statute, no later than March 31, 1970. The general election is not to be held until November 3, 1970, seven months after the required filing date.

Plaintiff contends the filing statute is not germane to any valid objective Kentucky may have in regard to unaffiliated candidates; that it is designed to favor established political parties over independent candidates; that it imposes invidiously discriminatory disqualifications on independent candidates in violation of the Fourteenth Amendment; and that it infringes upon the right of plaintiff and other individuals to associate for advancement of a political belief in violation of the First Amendment.

Plaintiff prays for a declaratory judgment holding Kentucky Revised Statute 118.130(3) in violation of the First and Fourteenth Amendments of the Constitution, and injunctive relief enjoining the Secretary of State of Kentucky from giving force and effect to said statute.

Luther J. Wilson, a potential candidate for the United States House of Representatives from the Third Congressional District of Kentucky has intervened and seeks relief identical to that of plaintiff.

The issues of this controversy resolve to a question of the reasonableness of the challenged statute. It must be assumed that the Representatives

who drafted and enacted this law were responsible people doing what they believed was best for the State of Kentucky. There is, therefore, at the outset a formidable presumption in favor of the constitutionality of the regulation.

The filing statute requires all candidates, regardless of party affiliation, to present their nominating petitions to the office of the Secretary of State fifty-five days in advance of the primary elections. Because the primary elections are held on the fourth Tuesday in May, the candidates are forced to file seven months before the general election. This is undoubtedly a substantial span of time, but not, in the opinion of the court, unreasonable. It is not unreasonable, when considering the heterogeneous geographical complexion of the State, the rural highways and airport facilities within the State, and the frequently slow means of communication among the people of the State, to provide the electorate with a seven month period to evaluate those people seeking to represent them.

A three judge court for the Southern District of Ohio, in Socialist Labor Party v. Rhodes, 290 F.Supp. 983 (1968) held *inter alia* that a statutory provision requiring all candidates to file ninety days in advance of the primary election was unreasonable. The invalidation of the Ohio filing regulation does not necessarily create a precedent which this court should follow. Certainly the needs of the electorate of Ohio, which is a predominately metropolitan state, can be distinguished from the needs of the people of Kentucky. What may be appropriate for one state, may not serve the needs of another. Defendant, in its oral argument before the court, noted that nine states require their candidates for public office to file seven or more months in advance of the general election. Surely it is not improper to require a man seeking a seat in the United States House of Representatives to take his case to the people seven months before the general election.

The statute is not unconstitutionally discriminatory. It does not make it any more difficult for an independent candidate to have his name placed on the ballot than a party candidate. The statute simply requires all potential candidates, whether Democrat, Republican or Independent, to file for nomination on the same date. It is not without reason to require a candidate to announce his desire to seek public office well in advance of the general election. A man who is genuinely concerned with the needs and wants of the constituency he hopes to represent, who seeks public office not out of a desire to aggrandize himself, but to contribute to the well-being of his followers, ought to be familiar with the election laws regulating his candidacy, and ought to be willing to give the public a sufficient time to study and analyze the tenets of his political philosophy.

The court is being asked to strike down a solemn legislative enactment made presumably after committee hearings, examinations of various geographical locations, and the other things that go into the establishment of fixing election laws. It would be impossible for this court, in the course of several days, on the sole basis of briefs and oral arguments, to adequately delve into the manifold purposes of a statute, the propriety of which has been scrutinized by the legislature at each step of the law making process.

The essence of a free government is the power of the people's representatives to determine under what laws they will live. Fundamental to our presidential system of democracy, both on the federal and state level, is a functional separation of total governmental powers into an executive, a legislative, and a judicial branch, each independent of the other. Our Constitution is structured around this political theory of government, and while each branch must protect those powers delegated to it, each must be careful not to encroach upon those powers outside its province. The judiciary

must scrupulously avoid usurpation of the legislative authority.

The court being of the opinion that Kentucky Revised Statute 118.130(3) is not inherently unreasonable, the complaint is dismissed in accordance with the order entered and dated October 2, 1970.

BROOKS, Circuit Judge (dissenting).

While the majority correctly characterizes the issue in this case as the reasonableness of the challenged election statute [Kentucky Revised Statute § 118.130(3)] as applied to independent candidates, I respectfully dissent from their conclusion on this question. In addition, while I am in accord with the majority's observations on the role of the federal judiciary and the extreme caution which must be exercised in approaching questions of the Constitutional validity of legislative enactments, nevertheless, when a legislative enactment goes beyond reasonable bounds and gives unfair advantage to one group of individuals over another, protection of solemn Constitutional guarantees requires judicial consideration and, if necessary, protection of these Constitutional rights. These types of Constitutional controversies cannot simply be relegated to the political arena. Wesberry v. Sanders, 376 U.S. 1, 5–7, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Baker v. Carr, 369 U.S. 186, 208–237, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Election statutes such as K.R.S. § 118.130(3) which require independent candidates to file nomination papers months before a primary election have been recognized as making it more difficult for independent candidates than for candidates affiliated with established political parties to get their names on the ballot for a general election, and also undermining the effectiveness of voters who wish to elect independent candidates, Hadnott v. Amos, 394 U.S. 358, 366, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969); Allen v. State Board of Elections, 393 U.S. 544, 570, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) [Whitley v. Williams], and have been held to be constitutionally unreasonable. Socialist Labor Party v. Rhodes, 290 F.Supp. 983, 989 (1968) (Three-Judge Court); and see Judge Johnson's dissenting opinion in Hadnott v. Amos, 295 F.Supp. 1003 at 1014 (1968) (Three-Judge Court), majority reversed on other grounds in 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969).

I can find no compelling state interest in requiring an independent candidate to file nomination papers fifty-five days before a primary election in which he cannot run and which is seven months before the general election is to be held. There are obvious reasons why this requirement is necessary for candidates of recognized political parties who wish to run in the primary election, however, the statute as applied to independent candidates is constitutionally unreasonable.