Lyndon H. LaROUCHE, Jr., et al., Plaintiffs,

v.

Paul GUZZI, Secretary of the Commonwealth of Massachusetts, Defendant,

and

Steven R. NELSON et al., Plaintiffs,

v.

Michael S. DUKAKIS, Governor of the Commonwealth of Massachusetts, et al., Defendants.

Civ. A. Nos. 76–2451–C, 76–2514–C.

United States District Court, D. Massachusetts.

Aug. 5, 1976.

Graham Lowry, Boston, Mass., David S. Heller, New York City, for plaintiffs in Civ. A. No. 76–2451–C.

Albert C. Bielitz, Jr., Somerville, Mass., for plaintiff in Civ. A. No. 76–2514–C.

Thomas Kiley, Asst. Atty. Gen., Boston, Mass., for defendants in Civ. A. No. 76–2451–C.

Thomas Kiley, Asst. Atty. Gen., Boston, Mass., for defendants in Civ. A. No. 76–2514–C.

## OPINION

LEVIN H. CAMPBELL, Chief Judge.

The plaintiffs in these two actions are candidates for the offices of President, United States Senator, and Congressman. They seek positions on the Massachusetts ballot in the general election which will be held on November 2, 1976. Having failed to submit the requisite number of certified signatures on their nomination papers by July 6, 1976, the deadline provided under Massachusetts law,[1] they now challenge the constitutionality of the deadline and request injunctive relief giving them additional time to collect and file the required signatures. They argue that the deadline is unreasonably remote from the election and is therefore an unconstitutional burden upon the rights of voters and candidates. Plaintiffs rely upon two recent three-judge court decisions, *Salera v. Tucker*, 399 F.Supp. 1258 (E.D.Pa.1975), aff'd, 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976), and *Bradley v. Mandel*, No. T 76–638 (D.Md., May 17, 1976), invalidating March deadlines in Pennsylvania and Maryland on the ground of remoteness. We believe that the Massachusetts statutory scheme is distinguishable, and constitutionally valid, and consequently hold for defendant.

I

Plaintiff Steven R. Nelson brought his action on July 2, 1976, at which time he was granted a temporary restraining order requiring the defendant Secretary of the Commonwealth to make nomination papers available, and allowing Nelson to continue to collect signatures for nomination to the office of Congressman for the Eighth Congressional District of Massachusetts. Plaintiffs in that action are Nelson and two Massachusetts voters, one of whom signed Nelson's papers and one of whom alleges a desire to do so. They assert that by reason of its remoteness from the general election, the July 6 filing date violates the First and Fourteenth Amendments.

For the purposes of a hearing on plaintiffs' motions for a preliminary injunction, Nelson's action was consolidated on July 6,

1. M.G.L. c. 53, § 10 requires that the nomination papers of candidates for offices to be filled by all the voters of the Commonwealth or for Congressmen shall be filed on or before the seventeenth Tuesday (July 6, 1976) preceding the day of the general election (November 2, 1976).

1976, with a separate proceeding instituted by Lyndon H. LaRouche, Jr., Graham Lowry, Lawrence Sherman, and the United States Labor Party. LaRouche seeks to run for President in November, and Lowry for United States Senator from Massachusetts.

This court of three judges was convened on July 7, 1976, and, pursuant to stipulation of the parties, and with the cooperation of Massachusetts officials, entered a preliminary injunction designed to permit Nelson and the United States Labor Party to continue gathering and submitting signatures pending determination of the constitutionality of the Massachusetts filing deadlines. The cases are now before us upon defendants' motions for summary judgment, the pleadings, and certain agreed facts. Plaintiffs in both cases have agreed that the single issue to be decided at this juncture is whether the July 6 filing date is unconstitutionally remote from the date of the November 2 election.[2]

## II

Nomination in Massachusetts of state and federal candidates for election at biennial state elections is largely controlled by chapter 53 of the Massachusetts General Laws. Setting aside some additional procedures relating to several offices, e. g. the March presidential preference primary, M.G.L. c. 53, §§ 48 & 70E (1976–77 Supp.), there are two avenues by which candidates can secure placement on the general election ballot. The first is available to individuals who belong to recognized political parties, of which in Massachusetts there are currently three—Republican, Democratic and American. (Party status is obtained when a party's gubernatorial candidate has polled over 3% of the total vote cast for governor in the preceding election. M.G.L. c. 50, § 1.) Members of such parties are included on the primary ballot if they obtain the number of signatures prescribed by law for the particular office. M.G.L. c. 53, § 44. Nomination

papers are available for circulation 12 weeks before the date they are due to be filed, M.G.L. c. 53, § 47 (1976–77 Supp.), and must be submitted to local officials (e. g. town and city clerks) for certification at least seven days before the last day for filing with the Secretary of the Commonwealth. M.G.L. c. 53, § 46 (1976–77 Supp.). Those seeking party nomination to offices voted upon by all the voters of the Commonwealth, or to the office of Congressman must file certified papers with the Secretary ten weeks before the state primary (i. e. July 6, 1976). M.G.L. c. 53, § 48 (1976–77 Supp.). The primary is on the Tuesday seven weeks before the general election (September 14, 1976). M.G.L. c. 53, § 28 (1976–77 Supp.). Accordingly one seeking ballot status via the party route files papers with the Secretary 119 days before the general election, and may become finally qualified only upon winning the party primary in September.

The second avenue for getting on the ballot is available to those who choose to run as independents, like Nelson, or those who like LaRouche and his associates belong to a political party which has not achieved recognized party status. Those individuals must also circulate and file nomination papers, and obtain a requisite number of signatures. The timetable for circulation and filing is the same as for party members. Nomination papers are furnished in April and twelve weeks is afforded to obtain signatures and have them certified for filing by July 6, 1976 with the Secretary. M.G.L. c. 53, § 10. The number of signatures necessary is generally greater than the number required of party candidates. Nelson must have 2,801 signatures to secure a place on the ballot for Congressman as an independent, whereas a party candidate for Congress would need 2,000 certified signatures. LaRouche and other United States Labor Party candidates need 37,906 certified signatures, as compared, for example, to the 10,000 signatures required

---

**2.** Plaintiffs LaRouche et al. point out that signatures must be submitted for certification to the local registrars at least seven days before the last day for filing with the Secretary of the

Commonwealth. Thus, they contend, the actual deadline is June 30, 1976, which is 126 days before the election rather than 119.

for party candidates for United States Senate. M.G.L. c. 53, § 44. The pool of voters eligible to sign independent papers is greater than the pool of those eligible to sign party nomination papers, since all registered voters may sign the papers of independents, M.G.L. c. 53, § 7, while members of a recognized party may not sign the nomination papers of another recognized party's candidates, M.G.L. c. 53, § 46 (1976–77 Supp.).

Plaintiffs in the instant case failed, by relatively small margins, to collect and submit the requisite number of signatures by the filing deadline. Although papers had been available for more than ten weeks previously, Nelson did not obtain nomination papers until June 10, 1976, and firmly committed himself to his candidacy only seven days before his papers were due for submission. In spite of his last minute efforts, however, he and four full-time and eight part-time canvassers obtained more than 1,900 signatures, of which 1,400 were certified by local election officials.

LaRouche and the other United States Labor Party candidates secured nomination papers promptly on or about April 6, 1976, when they first became available. Approximately 50,000 signatures were collected in the twelve week statutory period, of which 35,416 were certified by local officials—only several thousand less than the 37,906 needed.

There is evidence that during the same period other independents not involved in this litigation were able to secure the requisite number of certified signatures. Peter Camejo, a candidate for president affiliated with the Socialist Workers Party, obtained more than 45,000 signatures. Carol Henderson Evans and Mac Warren, similarly affiliated, qualified as independent candidates for United States Senator and Congressman. Eight independent Congressional candidates have qualified,[3] including a candidate of the United States Labor Party

and an independent candidate in the same district from which Nelson seeks election.

### III

Plaintiffs advance basically two propositions: (1) that *Salera v. Tucker, supra*, which was affirmed by the Supreme Court, is tantamount to a holding by the Supreme Court that the present Massachusetts deadline is unconstitutional; and (2) that the filing deadline must fall unless Massachusetts can demonstrate a compelling state interest in selecting the present date rather than some later date. Plaintiffs LaRouche, et al., also contend that there is a material issue of fact to be tried; namely, that to obtain signatures before July places upon them an "onerous burden", since the farther away people are from the primary and general elections, the less interested are they in the political races.

Turning to the first point, we do not agree that the summary affirmance by the Supreme Court of *Salera* is controlling. Whether the present deadline is treated as 119 or 126 days before the election, it is approximately one-half the roughly 240 days in *Salera* and *Bradley*. We take judicial notice that interest in the forthcoming national elections and media coverage in February and early March, the time of the challenged deadlines in *Salera* and *Bradley*, is far less than in May and June, by which time many of the state presidential primaries are over or in progress. The weather, of course, has also improved, adverse weather conditions being one of the factors mentioned by the *Salera* court. 399 F.Supp. at 1266. The Pennsylvania system, moreover, allowed only three weeks *in toto* for gathering signatures, as contrasted with the twelve weeks allowed in Massachusetts; and without detailing them, we note that the systems are markedly dissimilar in many other ways. We thus see little basis for mechanically applying the result in *Salera* to the present case. Indeed, in *American Party of Texas v. White*, 415 U.S. 767,

---

**3.** Interestingly, we are told that in the Congressional races one of the recognized parties, the American Party, has fielded but one candidate; the Republicans but nine; and the Democrats twenty-seven pre-primary candidates.

787 n. 18, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1973), a 120-day pre-election filing deadline was said to be "neither unreasonable nor unduly burdensome", although in *White*, as in *Salera*, there were factual differences making it impossible simply to transfer those conclusions to the instant case. *See also Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) (involving a filing deadline comparable to the present one); *Pratt v. Begley*, 352 F.Supp. 328 (E.D. Ky.1970), *aff'd*, 409 U.S. 943, 93 S.Ct. 282, 34 L.Ed.2d 214 (1972); *Socialist Labor Party v. Rhodes*, 318 F.Supp. 1262, 1273 (S.D. Ohio 1970), *aff'd sub nom. Sweetenham v. Gilligan*, 409 U.S. 942, 93 S.Ct. 282, 34 L.Ed.2d 214 (1972).

■ As for plaintiffs' second point, we do not agree that the test of constitutionality is whether the July 6 date was "compelled", in the sense that any later date must be shown to have been administratively out of the question. While the Supreme Court has indicated that candidacy restrictions must further a state's "compelling interests", *see e. g. Storer v. Brown*, 415 U.S. 724, 729, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1973), it has not interpreted this language as depriving the states of considerable latitude to set times, dates and other standards. Rules may differ widely from state to state, but all may reflect a state's "compelling interest" in setting up a structured system, even though no one format can be said to be the only possible one. The Constitution gives to the states the initial task of determining the qualifications of voters who will elect members of Congress, Art. I, § 2, cl. 1, and the states may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." Art. I, § 4, cl. 1. The states have an important interest "in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot. . . ." *Jenness v. Fortson, supra*, 403 U.S. at 442, 91 S.Ct. at 1976. They also have a significant interest in "regulating the number of candidates" to avoid "voter confusion" and "overcrowded ballots". *Bullock v. Carter*, 405 U.S. 134, 145,

92 S.Ct. 849, 31 L.Ed.2d 92 (1972). States may choose their own means to achieve these ends; and the particulars of such systems are not *per se* unconstitutional merely because the state might have adopted an alternative which would have made it easier for an independent candidate to get on the ballot. *See Storer v. Brown, supra*, 415 U.S. at 730, 94 S.Ct. 1274; *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973).

■ There are, of course, limits upon a state's discretion. *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Massachusetts is required to provide a fair and reasonable avenue for a new party or an independent candidate to secure a place on the ballot. *Id.* But there is, as Justice White wrote in *Storer*, "no litmus-paper test for separating those restrictions that are valid from those that are invidious . . . ." 415 U.S. at 730, 94 S.Ct. at 1279. Decision is very much a " 'matter of degree' ", *id; see Salera v. Tucker, supra*, 399 F.Supp. at 1264. *See also Clough v. Guzzi*, 416 F.Supp. 1057 (D.Mass., July 9, 1976).

■ In the present case, we are satisfied that the Massachusetts filing deadline does not unreasonably burden the right of independent candidates to achieve a place on the ballot. The requirement must be viewed in the context of the rather generous 12 week period for circulating petitions. *Cf. Storer v. Brown, supra* (upholding the constitutionality of 24 days), and *Salera v. Tucker, supra* (upholding three weeks). Moreover, in *Williams v. Rhodes, supra*, in which the Supreme Court held Ohio's system unconstitutional, the filing date was in early February, comparable in the degree of remoteness to the early March filing dates in *Salera* and *Bradley*. Far less does the July 6 date relegate candidates to a "political vacuum"; and taken with the other features of the Massachusetts system, it does not in our view unreasonably burden the rights of independent voters and candidates. Supporting this conclusion are the facts that new parties and independents

have with some regularity found places on the Massachusetts ballots and that plaintiffs themselves fell only slightly short of the mark. To be sure, a restriction would be no less burdensome because someone, by heroic efforts, has surmounted it; but we do not see any indication that the Massachusetts deadline poses a hurdle of any such formidable character.

Massachusetts has undertaken to apply the same filing dates to all candidates, both independents and those seeking a party nomination; and while it may be true that party candidates in contested primaries are not selected until September, leaving independents to gather their signatures and qualify before the party nominees are known, all candidates gather signatures during the same period of time. Massachusetts claims that this simplifies and eases its administrative burdens in various ways. While plaintiffs challenge these assertions, we think Massachusetts is entitled to judge what procedures it prefers administratively as long as they are fair and reasonable.

Finally, with respect to plaintiff's assertion of a contested issue of material fact concerning the greater difficulty of securing signatures in the spring than later, this is the sort of legislative-type matter which in our view does not invite or necessitate an evidentiary hearing. Even if it could be proven that securing signatures gets progressively easier as the election approaches, we do not think that the difficulty inherent in the present system is so great as to render it constitutionally invalid. The state is not required to hold open the ballot until the latest possible moment, so long as all candidates are treated equitably.

*Defendants' motions for summary judgment are allowed, and the complaints are hereby dismissed.*