The Honorable Morril Harriman State Senator 522 Main Van Buren, AR 72956
Dear Senator Harriman:
This is in response to your request for an opinion regarding Senate Bill 461, a bill to establish a uniform filing date for both independent candidates and those seeking to qualify as candidates for political party nominations.[1] You have asked if there are any court decisions which indicate whether or not the bill would be constitutional.
The Code section amended by this bill (A.C.A. § 7-7-103) has been amended several times over the past ten years with respect to both the signature requirement and the filing deadline. It has also been challenged, in its various forms, as being unconstitutional on several previous occasions.See Rock v. Bryant, 459 F. Supp. 64, 70 (E.D. Ark. 1978), Lendall v.Jernigan, 424 F. Supp. 951 (E.D. Ark. 1977), aff'd. 433 U.S. 901 (1977), and Lendall v. Bryant, 387 F. Supp. 397 (E.D. Ark. 1975). A review of these cases, and other relevant decisions in this area, indicates that while there may be substantial grounds for a challenge, the past experience of independent candidates is a factor that must be considered when assessing the burden of the regulatory scheme. See Mandel v.Bradley, 432 U.S. 173 (1977), cited in Rock v. Bryant, supra. The court in Rock noted that the importance of past experiences of other candidates has been emphasized as a "significant indicator." 459 Ark. at 70, citingAmerican Party of Texas v. White, 415 U.S. 767 (1974). It should be noted in this regard that as amended by SB 461, Section 7-7-103 would in essence reflect the same filing requirements as were in place from 1981 until 1989.[2] A court would thus be able to draw from this time period for reviewing candidates' past experience.
It is therefore my opinion that a conclusive determination regarding the constitutionality of SB 461 cannot be reached without undertaking this factual inquiry. It seems clear, as a general matter, that requiring independent candidates to qualify during the same period as those desiring to run in party primaries is "not necessarily unconstitutional."Lendall v. Bryant, 387 F. Supp. at 402, citingJenness v. Fortson,403 U.S. 431 (1971). The court will look to see "if the qualifying deadline is not too far in advance of the general election and [if] the independent has a reasonable period within which to obtain signatures to his nominating petitions." Id. In this regard, at least one court has upheld a requirement that all candidates, regardless of party affiliation, file their nominating petitions by March 31, which was 55 days before the primary elections and 210 days in advance of the general election. Pratt v. Begley, 352 F. Supp. 328 (E.D. Ky. 1970), cited inRock v. Bryant, supra. Senate Bill 461 imposes a similar deadline. Apparently, however, the statutory scheme in Pratt, supra, did not include a signature requirement. And we know that the deadline provision must be read in connection with the signature requirement. See Lendall v. Bryant
and Rock v. Bryant, supra.
In Bradley v. Mandel, 449 F. Supp. 983 (D. Md. 1978), a case decided on remand from the Supreme Court (see Mandel v. Bradley, 432 U.S. 173
(1977)), the three-judge district court held unconstitutional a requirement that independent candidates file petitions, signed by 3% of the voters, 70 days before the party primaries, such date occurring 230 to 240 days before the general election in presidential years. The court took into account what it viewed as "moderating factors" in Maryland's system, including the unlimited period for gathering signatures as well as the "moderate" 3% signature requirement. 449 F. Supp. at 987. But it concluded:
 [W]e are unable to see how any of these provisions actually ameliorates the major defect of the Maryland scheme: viz. that the remoteness of the filing date makes it impossible to generate interest on the part of workers and the electorate in the candidacy of the independent and to generate the publicity, campaign funds, and interest which must be generated even to accomplish the moderate requirement of obtaining the signatures of only 3% of the registered voters eligible to vote for the office that the independent candidate seeks. Overall, we do not find any moderating factors which remove or significantly ameliorate the substantial burden of Maryland's early filing date for independent candidates.
Id. See also McLain v. Meier, 637 F.2d 1159 (8th Cir. 1980) (holding unconstitutional a new political party filing deadline that was approximately 90 days in advance of the primary election as "unnecessarily removed from the time of the major parties' most active campaigning."Id. at 1164).
These cases raise serious questions regarding the constitutionality of the deadline imposed in Senate Bill 461. Under the bill, independent candidates would be required to file approximately 55 days before the primary election and 210 days before the general election. Although this is essentially the same deadline that was approved by the Kentucky court in Pratt v. Begley, supra, a key distinction lies in Arkansas' signature requirement, including the 60-day time period for gathering signatures.Rock v. Bryant, supra, offers no support for this filing scheme, and indeed may cast doubt due to the court's conclusion that the filing requirements at issue in that case "[do] not work to require plaintiff, in essence, to solicit signatures and thereby evidence support for his candidacy in a political vacuum or at a time when the campaign issues have not yet crystallized." 459 F. Supp. at 73.[3] This concern regarding the remoteness of the filing date appeared to be the deciding factor in Bradley v. Mandel, supra, and McLain v. Meier, supra.
It should perhaps also be noted, finally, that the filing deadline under SB 461 is essentially the same as that which was struck down in the prior unreported case of Lendall v. Jernigan, LR-76-C-184 (E.D. Ark. 1976). The extent to which the court in that case viewed the filing requirement as unconstitutional apart from any signature requirement is, however, somewhat unclear. The percentage requirement at that time was 10%. See
Act 700 of 1975. The case was subsequently characterized in Lendall v.Jernigan, as invalidating the deadline (set at that time between the second Tuesday in March and the first Tuesday in April before the preferential primary) "regardless of the existence of, or the terms of, any petitioner percentage requirement." 424 F. Supp. at 954. However, inRock v. Bryant, supra, the case was described as holding the deadline unconstitutional "as read together with the 10% requirement. . . ."459 F. Supp. at 71 (emphasis added).
In conclusion, it appears that the filing deadline in SB 461 is somewhat comparable, in the degree of remoteness, to deadlines that have been held unconstitutional. Decisions in this area are, however, as noted by the Supreme Court, "very much a `matter of degree'. . . ." Storer v. Brown,415 U.S. 724, 729 (1973), citing Dunn v. Blumstein, 405 U.S. 330, 348
(1972). Upon a challenge, a court will in all likelihood make findings of fact, following a review of past experience, as to the difficulty of obtaining signatures in time to meet the early filing deadline.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] Arkansas Code Annotated § 7-7-203(c) (Repl. 1993) states that party pledges and political practice pledges shall be filed "during regular office hours in the period beginning at 12:00 noon on the third Tuesday in March and ending at 12:00 noon on the fourteenth day thereafter, before the preferential primary election. The preferential primary is held on the Tuesday two (2) weeks before the general primary, and the general primary is held on the second Tuesday in June before the general election. Id. at subsections (a) and (b).
[2] The section was amended by Act 591 of 1989 to extend the filing deadline to May 1. Senate Bill 461 removes the May 1 extension.
[3] Section 7-7-103 at that time set a filing deadline of noon on the Monday immediately preceding the date of the preferential primary. SeeRock, 459 F. Supp. at 66, and Ark. Stat. Ann. § 3-105(c) (Supp. 1977).