**Jim LENDALL, Plaintiff,**

v.

**Kelly BRYANT, as Secretary of State of the State of Arkansas and as Secretary of the State Board of Election Commissioners for the State of Arkansas, Defendant.**

**No. LR–74–C–305.**

United States District Court,
E. D. Arkansas, W. D.

Jan. 3, 1975.

Jim Lendall, pro se.

Jim Guy Tucker, Atty. Gen., and Alston Jennings, Jr., Asst. Atty. Gen., of Ark., Little Rock, Ark., for defendant.

Before STEPHENSON, Circuit Judge, and HENLEY and EISILE, District Judges.

PER CURIAM:

### Memorandum Opinion

In this suit in equity the plaintiff, Jim Lendall, complains that he was unconstitutionally denied the opportunity of running as an independent candidate for a seat in the Arkansas Legislature in the general election that was held on November 5, 1974. He challenges the qualification requirement for independent candidates for State, district, county, and township offices which appears in Article 1, Section 5(c) of the 1969 Election Code of Arkansas, Act 465 of 1969, Ark.Stats., Ann., Cum.Supp., section 3–105.[1] He claims that the requirement, presently to be mentioned, deprives him and others similarly situated of rights protected by the First and Fourteenth Amendments to the Constitution of the United States, and he seeks both declaratory and injunctive relief.

Named as defendant is the Honorable Kelly Bryant, Secretary of State of the State of Arkansas, whose duties include the certifying to the respective County Boards of Election Commissioners the names of political party nominees and qualified independent candidates which are to be included on the printed ballots used in Arkansas general elections

---

1. Act 465 of 1969 is a complex and comprehensive piece of legislation dealing with practically all phases of the election process of Arkansas, including political parties, candidates, election officials, primary, general, and special elections; it is codified as Title 3 of the current Cumulative Supplement to the Annotated Statutes of Arkansas. For convenience relevant sections of the Code will be referred to simply by section numbers as they appear in the Annotated Statutes.

which are held on the first Tuesday in November of each even numbered year.[2]

Federal subject matter jurisdiction is not questioned and is established. 28 U.S.C.A., section 1343(3) and 42 U.S.C.A., section 1983. In view of the fact that plaintiff seeks to enjoin the defendant from enforcing a State statute on the ground that it is violative of the Constitution of the United States, the case has been submitted to a District Court of three Judges as required by 28 U.S.C.A., section 2281.

■ The suit was filed by plaintiff pro se on October 7, 1974, just a little over a month before general election day. Plaintiff asked for a preliminary injunction, but on October 22 in open court plaintiff conceded that in view of the imminence of the election it would not be feasible for the Court to undertake to grant him relief that would enable him to run as an independent in the November election, and no preliminary relief was granted. We agree with plaintiff, however, that the fact that the election has been held does not render the case moot since plaintiff insists that he plans to run for office in the future as an independent candidate. See Storer v. Brown, 1974, 415 U.S. 724, 737, f.n. 2, 94 S.Ct. 1274, 39 L.Ed.2d 714.[3]

## I.

Candidates who run for public office in general elections in Arkansas fall into three categories: (1) The nominees of recognized political parties who, if opposed for party nomination, must run in party primaries in order to obtain nomination. (2) Qualified independent candidates whose names appear on the printed general election ballots along with the names of party nominees. (3) Write-in candidates whose names must be written on the ballots by the voters or by persons authorized by law to assist illiterate or handicapped voters.[4]

Candidates for State and district offices, including seats in the Legislature, are required to file political practice pledges with the Secretary of State, and candidates for party nominations are generally required to file party loyalty pledges with party officials.

Recognized political parties in Arkansas are required to conduct primary elections for nominations for offices with respect to which two or more persons seek nomination. Two primaries may be required; the first is known as the preferential primary, and the second is known as the general primary. If there are more than two candidates for a single office, and if none of

2. The defendant is the ex officio Secretary of the Arkansas State Board of Election Commissioners, and he has been sued both as Secretary of State and as Secretary of the Board. However, the Board has nothing to do with the subject matter of this lawsuit, and the complaint states no cause of action against the defendant as Secretary of the Board.

3. Plaintiff filed his suit as a class action under Rule 23 of the Federal Rules of Civil Procedure purporting to represent himself and others who have been and may be adversely affected by section 3–105(c). We doubt that he represents a definable class, or that he would adequately represent such a class if one exists. In any event we do not think that at this particular juncture any useful purpose would be served by entertaining the suit as a class action and we decline to do so. That determination will free plaintiff from the necessity of comply-

ing with the notice requirements of Rule 23. While the decision in the case will be applicable only to the immediate parties, any decision herein reached may well have precedential effect should the question of the validity of section 3–105(c) arise in future litigation.

4. This same Court recently considered the validity of certain Arkansas statutory requirements with respect to write-in votes in Smith v. Arkansas et al., E.D.Ark., 385 F. Supp. 703. A requirement that the candidate's name as written on the ballot must correspond exactly with the name as it appeared on the candidate's own voter registration affidavit was held to be unconstitutional; another requirement that the name of the candidate must be written by a voter in his own handwriting was held to be inapplicable to illiterate or physically handicapped voters.

them receives a majority of votes cast in the preferential primary, the two receiving the highest number of votes must run against each other in the general primary.

The preferential primary is held two weeks before the general primary, and the date for the general primary is now fixed by law as the second Tuesday in June of each even numbered year. Persons seeking to run in a primary must qualify by filing the necessary pledges and paying the necessary fees between the second Tuesday in March and the first Tuesday in April before the preferential primary. Section 3–113(a), (c) and (d).

The qualifying requirement for independent candidates for State, district, county or township offices of which plaintiff complains is two-fold. In the first place, he must file his pledge with the Secretary of State, and in the second place he must accompany his pledge with nominating petitions signed by not less than 15 percent of the qualified electors of the State or of the subdivision thereof which he desires to serve. The number of qualified electors within the relevant area is conclusively established by reference to the number of votes cast for Governor in that area in the preceding general election. And the pledge and the petitions must be filed with the Secretary of State within the same period of time that is allowed for the filing and qualification of candidates for party nominations. Section 3–105(c).

The qualifying requirement for independent candidates for municipal office set forth in the section is much less rigorous than that imposed on independent candidates for the offices mentioned in the preceding paragraph. An independent candidate for municipal office may have his name placed on the ballot on the basis of petitions signed by not less than ten nor more than fifty qualified electors of the city or ward with respect to which the candidate desires to run. Moreover, by virtue of Act 42 of 1972, which appears in the Code as section 3–105.1, an independent candidate for municipal office is permitted to file his petition or petitions with the County Board of Election Commissioners not later than 45 days before the general election.

A write-in candidate for any office to be voted on in a general election may qualify simply by notifying the proper County Board or Boards of Election Commissioners of his intention to run not less than thirty days before the general election. Section 3–614.

## II.

Turning now to the facts which are not disputed, the record reflects that plaintiff is a white male resident and qualified elector of Pulaski County; he is a college student of limited financial means. He resides in Pulaski County Legislative District No. 3 which District is entitled to three seats in the Arkansas House of Representatives. District No. 3 is an urban district, and its population is predominantly black.

According to certificates submitted to the Court by the Secretary of State and by the County Clerk of Pulaski County, in 1972 District 3 consisted of 20 individual voting precincts. In the General Election of 1972 11,986 votes were cast for Governor in those precincts. Absentee ballots are not tabulated by precincts, and it is impossible to tell how many District 3 residents cast absentee ballots for Governor in 1972. Ignoring those ballots a person desiring to run as an independent for a position in the Legislature from District 3 would have been required to submit petitions containing not less than 1798 signatures of qualified electors residing in the District.

At some unspecified time plaintiff determined to seek House Position 1 in District 3 as an independent candidate. In order to qualify he was required to submit petitions containing at least the number of signatures just mentioned, and he was required to do so not later than the first Tuesday in April of this year, exactly seven months in advance of the general election.

The record does not reflect whether plaintiff made any effort to comply with section 3–105(c); it is clear that he did not comply with it. On June 18, a week after the general primary had been held, plaintiff submitted to the defendant a political practice pledge and a nominating petition signed by slightly more than one percent of the qualified electors residing in District 3. On the advice of the Attorney General of Arkansas the defendant refused to accept the pledge and the petition and consequently refused to certify petitioner's name to the Pulaski County Board of Election Commissioners for inclusion on the printed general election ballot as an independent candidate. If section 3–105(c) is valid, then the action of the defendant was entirely proper.

On September 25, plaintiff notified the County Board in writing that he would seek Position 1 in District 3 as a write-in candidate. Plaintiff in fact ran as such a candidate, but was defeated by the Democratic nominee who was reelected. The record does not reflect how many votes plaintiff received, but it was reported in the press that he received less than 50.

Plaintiff attacks section 3–105(c) on a variety of grounds. We do not stop to list all of them. Basically, plaintiff contends that the statutory requirement that an independent candidate for the Legislature qualify in the spring if he is to be permitted to run in the general election in the fall is unreasonable, arbitrary, and oppressive; that it promotes no compelling or legitimate State interest; that it impermissibly burdens the access of independents to the general election ballot; and that it discriminates against independents as candidates and against voters who would vote for independents if they had an opportunity to do so.

As to the requirement that an independent desiring to run for other than a municipal office must submit petitions signed by not less than 15 percent of the qualified electors of the area in which he desires to run, plaintiff claims that the percent required is excessive, that it is unnecessary to promote the legitimate interest of the State in keeping the names of frivolous candidates off the ballot, and that it discriminates particularly against poor people who would like to run as independents but who are not financially able to bear the burden of assembling petitions bearing the requisite number of signatures so long in advance of the general election. And it is also claimed that the requirement discriminates against poor people who would like to vote for independent candidates who are not affiliated with either of the two major political parties in this State.

Plaintiff asks for an adjudication that section 3–105(c) is unconstitutional and that its enforcement in the future be enjoined. He also asks for an affirmative holding that any requirement that an independent file more than 45 days before a general election or present a nominating petition containing more than one percent of the qualified electors in the relevant area is unconstitutional.

The defendant denies that the claims of the plaintiff have any merit, and prays that the complaint be dismissed.

### III.

We recognize at the outset of discussion that any State imposed restrictions on the right of qualified electors to cast their ballots for the candidates of their choice and to run for office are constitutionally suspect and can be upheld only to the extent that they are necessary to promote a compelling State interest. Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L. Ed.2d 274; Kramer v. Union Free School District, 1969, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Williams v. Rhodes, 1968, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24.

But, we must also recognize that the State has a valid and compelling interest in the fairness, efficiency, and orderly operation of its election machinery, and in the integrity of the electoral process on which democratic government

depends. Subject to the constitutional limitation above mentioned, a State may regulate and to some extent restrict the access of independent candidates to the ballot to prevent such things as unreasonable ballot congestion, voter confusion, and fraudulent or frivolous candidacies. However, the measures adopted by the State must not go beyond what the State's compelling interests actually require, and broad and stringent requirements or restrictions with respect to would-be independent candidates cannot stand where more moderate ones would do as well. American Party of Texas v. White, 1974, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744; Storer v. Brown, supra; Rosario v. Rockefeller, 1973, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1; Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274; Bullock v. Carter, 1972, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92; Jenness v. Fortson, 1971, 403 U.S. 431, 91 S.Ct. 1970, 29 L. Ed.2d 554.

■ A requirement that an independent candidate qualify for general election ballot position during the same period allowed for qualifying by those desiring to run in party primaries is not necessarily unconstitutional and can be upheld if the qualifying deadline is not too far in advance of the general election and where the independent has a reasonable period within which to obtain signatures to his nominating petitions. Jenness v. Fortson, supra; cf. Storer v. Brown, supra.[5]

■ The deadline provision must be read in connection with the 15 percent requirement, and when the two are read together we are persuaded that section 3–105(c) cannot stand as far as State, district, county, and township offices are concerned.

Whether the Arkansas Legislature so intended or not, the two parts of the requirement here challenged reinforce each other in interdicting independent candidacies for other than municipal offices, and in our view the interdiction is overbroad and excessively restricts the access of independent to the ballot. We think that the legitimate interests of the State can be served adequately by substantially less than section 3–105(c) requires.

Basically, we think, the objectionable feature of the two-fold requirement of the statute is that while American citizens are not required to exercise their franchise or participate in the political process within the framework of organized political parties, most of them do, and serious independent candidacies generally arise from substantial public dissatisfaction with party nominees or with the positions taken by the organized parties with respect to important issues. And that dissatisfaction does not ordinarily manifest itself until party nominees and party positions are known. It is simply too much to require a would-be independent candidate to obtain the signatures of 15 percent of the qualified electors of a State or political subdivision thereof weeks in advance of primary elections and months ahead of the general election. See in this connection the remarks of Mr. Justice Brennan in his dissenting opinion in Storer v. Brown, supra, 415 U.S. at 755, 758, 94 S. Ct. 1274.

Moreover, apart from the fact that the 15 percent requirement is coupled with the filing deadline that has been discussed, we are of the opinion that the 15 percent requirement itself is unreasonably oppressive and restrictive.

■ Admittedly, Arkansas has the right to keep its ballots clear of spurious or frivolous candidates, and in that connection to require one who would run as an independent to demonstrate by nominating petitions that he has at least some substantial public support for his candidacy. American Party of Texas v. White, Storer v. Brown, Bullock v. Cart-

---

5. Prior to the adoption of Act 465 of 1969 independent candidates could qualify down to 60 days before the general election. Act 352 of 1955, Section 2, Ark.Stats., Ann., Main Volume, § 3–837.

er, and Jenness v. Fortson, all supra. And the Supreme Court has approved, albeit with some questions, State requirements of petitions signed by as many as five percent of the qualified electors who would be affected by a particular independent candidacy. Storer v. Brown and Jenness v. Fortson, both supra. But there is nothing in those opinions or in others that have been called to our attention that would suggest that the Supreme Court today would approve a percentage requirement as high as that of Arkansas.

It may be contended that if a person desiring to run for the Arkansas Legislature as an independent is a serious candidate he should be able either personally or with the help of friends to obtain without great difficulty the necessary number of signatures within a subdivision as small as a legislative district. The validity of that contention would depend upon a number of variables which immediately come to mind. In any event, the requirement of section 3–105(c) is not limited to persons who would run as independents in small political subdivisions. The statute makes no distinction between the State as a whole and the smallest political township in the State. It applies alike to those would run for Governor, United States Senator, or Congressman and to those who would run for Justice of the Peace or township Constable.

Notice may be taken of the fact that in the November General Election between 500,000 and 600,000 votes were cast for Governor. Using the lower of the two figures, it appears that a person desiring to run for Governor as an independent in 1976 would have to gather the signatures of 75,000 people, and that would be a major task indeed, at least in ordinary circumstances.

The fact that Arkansas does not really need the 15 percent requirement is strikingly illustrated by the fact that under section 3–101(a) of the Code, as amended by Act 261 of 1971, an officially recognized political party can be formed on the basis of petitions signed by only seven percent of the number of persons who voted for Governor or Presidential Electors in the preceding general election, and that it can retain its status as a party as long as it can poll in general elections at least seven percent of the total votes cast for Governor or Presidential Electors.

Further discussion of the validity of section 3–105(c) would not be profitable. As stated, we hold that it is unconstitutional as applied to independent candidates for State, district, county, and township offices, including the plaintiff. No question is here raised as to its validity with respect to independent candidates for municipal office.

## IV.

■ While we are satisfied that plaintiff is entitled to a declaratory judgment that section 3–105(c) is unconstitutional to the extent indicated, we do not consider that in the circumstances he is entitled to any injunctive relief against the defendant. The 1974 General Election is over; and while plaintiff says that he intends to run again as an independent, he may never in fact undertake to do so.

Nor are we prepared to accept at this juncture plaintiff's contention that any deadline for filing by independent candidates in excess of 45 days in advance of a general election or any percentage requirement in excess of one percent of the qualified electors in the relevant area would be unconstitutional.

In view of our basic holding in the case, the Arkansas Legislature may want to amend section 3–105(c), and we do not deem it appropriate to undertake to dictate to the Legislature the extent to which the section should be amended if it is to be constitutionally tolerable. If the section is amended, there will be time enough for the constitutional validity of the amendment to be determined judicially.

Of course, if the Legislature does not act, and if the Secretary of State undertakes to enforce the statute as it is now

written, it may be necessary to enjoin him from so doing, assuming that our decision here is a correct one. But that can be done within the framework of another suit.

Judgment in accordance with the foregoing will be entered.