Roger MacBRIDE, Gayle R. Arch, Burton Jay, Guy Curtis and Daniel H. Haak, Appellees,

v.

The Honorable J. James EXON, Governor of the State of Nebraska, and the Honorable Allen J. Beermann, Secretary of State of the State of Nebraska, Appellants.

No. 76–1925.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1977.

Decided June 29, 1977.

---

Terry R. Schaaf, Asst. Atty. Gen., Lincoln, Neb., for appellants; Paul L. Douglas, Atty. Gen., Lincoln, Neb., on brief.

Thomas J. Culhane, Omaha, Neb., for appellees.

Before MATTHES, Senior Circuit Judge, and WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

In 1976 appellee, Roger MacBride, and David Bergland were, respectively, the duly nominated candidates of the Libertarian Party for the offices of President and Vice President of the United States. Efforts of Nebraska supporters of the Libertarian Party to place MacBride's name on the Nebraska general election ballot were frustrated by the application to him of the provisions of Neb.Rev.Stat. § 32–526,[1] which relates to the formation of new political parties in the state. When it developed that the Secretary of State of Nebraska was not authorized by Nebraska law to put MacBride's name on the ballot, this suit was instituted only two weeks prior to September 8, 1976, which was the last day on which the Secretary could certify the official general election ballot to local election officials.

Submission of the case was expedited and it was heard on August 31 along with a similar suit that had been filed by supporters of former Senator Eugene J. McCarthy, who was running for the presidency as an independent.[2] It was held in both cases that § 32–526 unconstitutionally restricts access to the ballot of the presidential candidates of newly formed third parties and of independent candidates for the presidency and is violative of the first and fourteenth amendments to the Constitution of the United States. Specific relief designed to benefit MacBride and McCarthy was granted. The opinion and judgment in the *McCarthy* case were filed on September 1, 1976, and the memorandum and judgment in the instant case were filed on September 3, 1976.

The defendants in this case, who are the Governor and Secretary of State of the State of Nebraska, have appealed contending that maintenance of the suit was barred by the eleventh amendment, that the dis-

trict court erred in not applying the "abstention doctrine," and that, in any event, the Nebraska statutory scheme which will be described is not unconstitutional.[3]

With certain exceptions not here pertinent, candidates for office who are to be voted on in a general election must have secured nomination by means of a party primary election or by petition. § 32–503.-01. If a person can obtain a sufficient number of signatures of qualified electors to nominating petitions he may run as an independent for any state, county or local office, but he may not run as an independent for the office of either President or Vice President of the United States. *See* § 32–504.

Primary elections are held on the Tuesday following the second Monday in May in each even numbered year, and in the years in which presidential elections are held, there is a presidential primary which is held at the same time as that at which the ordinary primary is conducted. §§ 32–505 and 506. General elections are held on the Tuesday following the first Monday in November of each even numbered year. § 32–601. In 1976 the primary elections were held on May 11, and the general election was held on November 2.

After a party primary has been held, the party must hold county conventions during the first seven days in June following the primary. § 32–550. At such conventions delegates to the party's state convention are chosen, and that convention is held not later than the first day of October following the county conventions. One of the functions of the state convention is to choose the party's presidential and vice presidential electors. § 32–556. The names of those electors are certified to the Governor and Secretary of State. *Id.*

---

1. All references to Nebraska statutes appearing herein are to the 1974 Reissue of the Revised Statutes of Nebraska.

2. That suit, *McCarthy v. Exon*, D.C.Neb., 424 F.Supp. 1143, was filed before the repeal of 28 U.S.C. § 2281 by the Act of August 12, 1976, Pub.L.No.94–381, § 1, 90 Stat. 1119. Accordingly, a district court of three judges was duly

convened. This suit was filed after the passage of Pub.L.No.94–381, and for that reason no three-judge court was called into session.

3. We are not advised as to whether a direct appeal to the Supreme Court has been taken in the *McCarthy* case.

At least sixty days prior to the general election in a presidential election year the appropriate officers of the various national party conventions are to certify the names of the parties' nominees for President and Vice President to the Secretary of State, and it is his duty to see that those names appear on the general election ballot. § 32–561.

In 1976 the Libertarian Party was not a recognized party in Nebraska, and if the names of its candidates for President and Vice President were to appear on the November ballot, the party had to qualify as a "new party" under the provisions of § 32–526.

That section provides, among other things, that a political party can gain ballot position as a new party if it files at least ninety days prior to the next primary election petitions signed by qualified electors representing at least 1% of the total number of votes cast for governor in the last general election. Further, the signatures must be so distributed as to include electors equalling in number at least 1% of the total vote cast for governor in the last preceding general election in at least one-fifth of the counties in the State.

Assuming that the requirements of § 32–526 are met, the party must then comply with the other statutory requirements that have been abstracted. When the relevant sections of the Nebraska election code are read together, it is evident that the Secretary of State has no authority to include the name of an independent candidate for President on the general election ballot, and he cannot put the name of an individual on the ballot as a party candidate for President or Vice President unless he has been named as a candidate by an existing recognized party or by a new party which has achieved recognition in compliance with § 32–526 and related statutes.

In order for the Libertarian Party to comply with § 32–526 it would have been required to submit petitions containing the requisite number of signatures to the Secretary of State not later than February 11, 1976, some nine months prior to the November general election. That, the Libertarian Party did not do and probably would not have been able to do.[4]

It was stipulated that on August 24, 1976 the plaintiff Burton Jay, a qualified elector of Nebraska who desired to be named as one of the Libertarian Party's presidential electors, presented to the Secretary of State 236 petitions for nomination of electors for MacBride and Bergland bearing the purported signatures of 2907 registered voters.

The Secretary marked the petitions "Received," but evidently advised Mr. Jay that the Secretary had no authority to place the names of MacBride and Bergland on the ballot on the basis of the petitions. This suit was filed on August 25.

The defendants immediately moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief could be granted, and the defendants also called upon the district court to abstain from further action. That motion was denied.

Relying on *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); and *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the district court adjudicated that:

> The statutory provisions of the State of Nebraska regarding elections, including Neb.Rev.Stat. 32–504, 32–526, 32–556, and 32–4,108, and the related statutes, which require that a political party seeking to have its candidate for the office of President of the United States placed on the November general election ballot must be certified ninety days in advance of the state's presidential primary are unconstitutional to that extent.

The district court then granted coercive relief. The Secretary of State was directed

**4.** No claim is made that the Libertarian Party was not a "political party" in 1976, and there is no question that Messrs. MacBride and Bergland were the duly certified nominees of that party.

to make a good faith determination within the time limit available to him whether the petitions before him reflected that the candidacy of MacBride had a "satisfactory level of community support." If the Secretary should so determine, he was directed to put MacBride's name on the ballot. But, if in good faith the Secretary could not make such a determination, he was not required to put the name on the ballot.

As stated, the Secretary was required by Nebraska law to certify the ballot by September 8, 1976. The judgment was filed on Friday, September 3; Monday, September 6, was Labor Day. In the circumstances the Secretary had no real chance to check the signatures on the petitions or to determine whether the persons signing the petitions were registered voters. Confronted with that situation the Secretary accepted the signatures as being the genuine signatures of registered voters, found that the level of support shown by the signatures was satisfactory, and caused the name of MacBride to appear on the ballot.

The election was held in due course, and notice may be taken of the fact that the Libertarian Party candidate did not carry Nebraska or any other state. The coercive feature of the judgment has gone out of the case, but the fact that the election has taken place does not render the controversy about the constitutionality of the Nebraska statutes moot. *Storer v. Brown,* 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *see also Lendall v. Bryant,* 387 F.Supp. 397, 399 (E.D.Ark. 1975).

There is no doubt that the district court had jurisdiction of the case under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 unless maintenance of the action was prohibited by the eleventh amendment. We find the defendants' eleventh amendment claim to be without merit. This is not a suit against the state, and neither the relief sought nor that granted affects the funds, revenues or property of the state. The object of the suit was to enjoin the defendants from continuing to enforce the challenged Nebraska statutes and to obtain an order which would place the name of the Libertarian candidate on the ballot.

Nearly seventy years ago the Supreme Court held that the eleventh amendment is not a bar to a suit against a state officer to enjoin him prospectively from enforcing a statute that is repugnant to the Constitution of the United States. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). And that case is still good law today. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan,* 415 U.S. 651, 663–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This case does not differ qualitatively from *American Party of Texas v. White; Storer v. Brown; Jenness v. Fortson* ; and *Williams v. Rhodes,* all *supra,* and in each of those cases the claims of the plaintiffs were considered on the merits.

In somewhat different contexts this court has approved and, indeed, has imposed upon state officers and agencies affirmative requirements far more stringent than the requirement imposed on the defendants in this case. For example, in *Holt v. Sarver,* 442 F.2d 304 (8th Cir. 1971), an opinion which was rendered in the long course of the litigation involving the Arkansas penal system, we affirmed the judgment of the district court holding the prisons unconstitutional and making affirmative requirements, and in that connection we specifically rejected a defense contention based on the eleventh amendment. A similar argument was rejected in *Board of Trustees of Arkansas A & M College v. Davis,* 396 F.2d 730 (8th Cir.), *cert. denied,* 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968), which was a suit for reinstatement brought by an instructor in an Arkansas institution of higher learning who claimed that his discharge had been in violation of his constitutional rights.

Although an eleventh amendment claim was not specifically advanced in the much more recent case of *Welsch v. Likins,* 550 F.2d 1122 (8th Cir. 1977), wherein the district court had held that certain state owned and operated hospitals in Minnesota were unconstitutional and had imposed af-

firmative requirements, compliance with which will cost the state large sums of money, we clearly indicated that had such a claim been made it would have been rejected, and the action of the district court in imposing the requirements was upheld.

■ The statutes challenged by the plaintiffs are plain and unambiguous, and we consider defendants' claim that the district court should have abstained from ruling so that the controversy might be litigated in the state courts to be plainly insubstantial. The federal questions in the case were before the district court, and it was the duty of that court to decide them.[5]

■ Turning to the merits, we do not question the proposition that Nebraska has a constitutional right, subject to restrictions, to regulate the formation and operations of political parties, and the right to prescribe how and in what circumstances the names of party candidates or independent candidates may be placed on the general election ballot. And the state has a right to protect its ballot from unreasonable congestion, voter confusion and fraudulent or frivolous candidacies. On the other hand, it must be recognized that the power of a state to restrict the right of qualified electors to vote for candidates of their choice and the right of candidates, including independent candidates, to run for office is severely circumscribed by the Constitution. Restrictive measures are constitutionally suspect, and if they are to pass constitutional muster, they must be reasonable and must be justified by reference to a compelling state interest. The measures adopted by a state may not go beyond what the state's compelling interests actually require, and broad and stringent restrictions or requirements cannot stand where more moderate ones would do as well. In addition to the cases cited by the district court and which we have mentioned, *see Lendall v. Bryant, supra,* 387 F.Supp. at 401–02, and cases cited.

It does not appear to us that the plaintiffs are quarrelling seriously, if at all, with the percentage requirements set out in § 32–526. Plaintiffs' real target seems to be the requirement that a new party desiring to run a candidate for President must qualify as a conventional party nine months before the candidate will be voted upon and must then hold a primary and follow that up with county conventions and a state convention.

In sustaining the complaint of plaintiffs Judge Urbom said:

The court finds the statutory scheme in the State of Nebraska requires a political party to organize and seek certification ninety days before the state's primary election (and thus nine months prior to the November general election) in order to secure a ballot position in the November, 1976, general election. Certainly the state may do much in the regulation of political parties. *See Williams v. Rhodes, supra; Jenness v. Fortson,* 403 U.S. 431 [91 S.Ct. 1970, 29 L.Ed.2d 554] (1971); and *American Party of Texas v. White,* 415 U.S. 767 [94 S.Ct. 1296, 39 L.Ed.2d 744] (1974). But the state has not pointed to nor have I been able to discern any compelling interest to require every political party seeking to have its presidential candidate placed on the November general election ballot to be certified in advance of the May primary. Likewise, the state has not pointed to nor have I been able to discern any compelling interest which would require every political party seeking to have its candidate placed on the November general election ballot to participate in the state's presidential primary in May. Under these circumstances, the court finds that to require the Libertarian Party to be "certified," which includes both a showing of popular support and compliance with organizational requirements, ninety days in advance of the primary and thus nine months prior to the general election is an arbitrary restriction upon the right of voters to

---

**5.** This case is unlike the recent case of *Easter v. Olson,* 552 F.2d 252 (8th Cir. 1977), in which we directed abstention until the Supreme Court of Nebraska could construe an ambiguous Nebraska statute dealing with the tenure of public school teachers.

vote for candidates of their choice. Accordingly, the statutes of the State of Nebraska, as set forth above, are unconstitutional to that extent and are in violation of the First and Fourteenth Amendments to the Constitution of the United States. It is no defense to argue that all political parties face the same obstacles to ballot access and therefore no discrimination is present. In the first place, this argument does not address itself to the arbitrariness of the statute. Second, *Jenness v. Fortson, supra,* points out:

> The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. . . . Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike, a truism well illustrated in *Williams v. Rhodes, supra.* [403 U.S. at 441–42 (91 S.Ct. 1970).]

■ We agree with the district court. The American political system is basically the two-party system with which all are familiar, and ordinarily popular dissatisfaction with the functioning of that system sufficient to produce third party movements and independent candidacies does not manifest itself until after the major parties have adopted their platforms and nominated their candidates. And this is particularly true with respect to third party candidates for President of the United States since frequently an individual with a commanding public following nation-wide will not emerge as a third party candidate until after having been disappointed in his hope or expectation of winning a place on the ballot of one of the major national parties.[6]

In our estimation it is completely unreasonable and unrealistic for a state to provide by statute that a person cannot get his name on the state's presidential ballot as a third party candidate unless that party has qualified as a party in advance of primary elections and at a time when the individual's candidacy itself is purely potential and contingent upon developments that may occur months later.

While the organized support that may rally around an independent candidate after the national conventions of the major parties may give itself a party label, it is not ordinarily a political party in the sense that it is an organization having a continuity of existence from year to year and election after election. It is more in the nature of an ad hoc committee set up on a more or less national basis to support an independent candidate. Nebraska has no means whereby an independent can get on the presidential ballot, and in that respect the Nebraska statutory scheme (and doubtless the schemes of other states as well) is constitutionally deficient.

■ This does not mean, of course, that Nebraska or any other state is required to give ballot access to any and all persons who may want to run for President or Vice President. As the district court recognized both in this case and in its companion *McCarthy* case, the state has a perfectly legitimate and compelling interest in requiring of a would-be candidate a showing, as by nominating petitions, that his candidacy is not frivolous, that he is truly an independent candidate, and that his candidacy has a satisfactory level of popular support.

What it does mean is that a state may not constitutionally impose requirements or restrictions based on time or organizational structure which effectively prevent a third party presidential candidate from ever gaining a position on the state's general election ballot. And that is exactly what the Nebraska statutes, particularly § 32–526, do.

As we view it, the judgment of the district court now stands as a declaratory judgment only. The problem presented by this case may or may not arise in 1980, but

---

**6.** For example, Theodore Roosevelt did not run for President in 1912 as the nominee of the Bull Moose Party until he had failed to gain the regular Republican nomination at the national convention of that party held in Chicago in June, 1912.

it is certain to arise in some future presidential year. It is, of course, open to the Nebraska Legislature to address itself to the problem.

The judgment of the district court is affirmed.

