295 N.W.2d 650 (1980)
MINNESOTA FIFTH CONGRESSIONAL DISTRICT INDEPENDENT-REPUBLICAN PARTY et al., Respondents,
v.
STATE of Minnesota ex rel. Warren SPANNAUS, Attorney General, Appellant, and
City of Minneapolis ex rel. Lyall A. Schwarzkopf, City Clerk, Respondent.
No. 50531.
Supreme Court of Minnesota.
August 8, 1980.
*651 Warren Spannaus, Atty. Gen., Richard Allyn, Sol. Gen., LeRoy C. Paddock, and D. Douglas Blanke, Sp. Asst. Attys. Gen., St. Paul, for appellant.
Popham, Haik, Schnobrich, Kaufman & Doty and Bruce D. Willis, Minneapolis, for Minnesota Fifth Congressional District Independent-Republican Party, et al.
Robert J. Alfton, City Atty., and Larry F. Cooperman, Asst. City Atty., Minneapolis, for City of Minneapolis ex rel. Schwarzkopf.
Michael H. Burns, MCLU Volunteer Atty., Linda Ojala, MCLU Legal Counsel, Minneapolis, for amicus curiae.
Heard, considered, and decided by the court en banc.
WAHL, Justice.
The question for our decision is whether Minn.Stat. § 202A.22, subd. 1(m) (1978), which requires that any candidate filing for a partisan municipal office as an "Independent" state in his affidavit of candidacy "that he did not seek, does not intend to seek, and will not accept any party's support for his candidacy," violates First Amendment rights of political association and expression. We hold that it does and affirm the order of the Hennepin County District Court declaring Minn.Stat. § 202A.22, subd. 1(m) (1978) unconstitutional and permanently enjoining its enforcement.
Plaintiff Minnesota Fifth Congressional District Committee (hereinafter, "Committee") is an authorized district committee of the Independent-Republican Party, a "political party" within the meaning of Minn. *652 Stat. § 202A.22, subd. 1(m) (1978).[1] The Committee has, in previous Minneapolis City Council elections, supported the candidacies of persons filing as independents in certain wards. That support has taken the form of party endorsements, cash contributions, circulation of sample ballots, organization of party volunteers to distribute campaign literature, mailings to party precinct delegates in a given ward, and providing a mailing list of known party members in a given ward. Plaintiffs, the Committee and its chairman, Edward B. White, Jr., argue that by requiring an independent candidate to make assurances "that he did not seek, does not intend to seek and will not accept any party's support for his candidacy," the State renders support of this kind illegal, and unjustly and unconstitutionally burdens freedoms of association and expression. Appellant State of Minnesota recognizes the restriction which the statute places on political association but argues that it has a compelling interest in assuring voters in a municipal election that candidates who run as "Independents" are truly independent of political parties.
The issue is of great importance. Freedom to engage in effective political expression, in untrammeled discussion and debate, is at the heart of the rights protected by the First Amendment. See Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). As the United States Supreme Court recognized in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976):
[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed "to secure `the widest possible dissemination of information from diverse and antagonistic sources,'" and "`to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"
424 U.S. at 48-49, 96 S.Ct. at 649, quoting New York Times Co. v. Sullivan, 376 U.S. 254, 266, 269, 84 S.Ct. 710, 718, 720, 11 L.Ed.2d 686 (1964). See Associated Press v. United States, 326 U.S. 1, 20, 65 S.Ct. 1416, 1424, 89 L.Ed. 2013 (1945); Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957).
The Constitution protects political association as well as individual political expression. One of those precious associational freedoms is the right of "like-minded persons to pool their resources in furtherance of common political goals." Buckley v. Valeo, 424 U.S. at 15, 22, 96 S.Ct. at 636. Political parties enjoy a constitutionally protected right of association, and any interference with that right is an interference with the rights of the party's adherents. Cousins v. Wigoda, 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975). Any restriction on either of these dual rights  "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively," Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)  must be subject to strict judicial scrutiny. The court in MacBride v. Exon, 558 F.2d 443 (8th Cir. 1977), striking down a statute which required that, before a party candidate could have his name placed on the ballot, his party had to be organized and registered several months before the general election, observed:

*653 [T]he state has a right to protect its ballot from unreasonable congestion, voter confusion, and fraudulent or frivolous candidacies. On the other hand, it must be recognized that the power of a state to restrict the right of qualified electors to vote for candidates of their choice and the right of candidates, including independent candidates, to run for office is severely circumscribed by the Constitution. Restrictive measures are constitutionally suspect, and if they are to pass constitutional muster, they must be reasonable and must be justified by reference to a compelling state interest. The measures adopted by a state may not go beyond what the state's compelling interests actually require, and broad and stringent restrictions or requirements cannot stand where more moderate ones would do as well.
558 F.2d at 448.
We must determine first whether the challenged statute is justified in reference to a compelling state interest. There is no doubt that the independence of "Independent" candidates is a legitimate matter of state concern. Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). In Storer, plaintiffs, who sought ballot positions as independent candidates for federal offices, challenged a California statute which forbade a ballot position as an Independent to any candidate who had a registered affiliation with a political party within one year prior to the preceding primary election. The Supreme Court upheld the challenged "disaffiliation provision," because it furthered the state's compelling interest "in the stability of its political system." 415 U.S. at 736, 94 S.Ct. at 1282. The court noted that the provision would have the effect of preventing defeated party primary candidates from "continuing the struggle"; would "work[] against independent candidacies prompted by short-range political goals, pique, or personal quarrel"; and would pose "a substantial barrier to a party fielding an `independent' candidate to capture and bleed off votes in the general election that might well go to another party"  all presumably legitimate goals. Id. at 735, 94 S.Ct. at 1282.
The thrust of the court's reasoning in upholding the disaffiliation provision, however, was that it "involves no discrimination against independents." Id. at 733, 94 S.Ct. at 1281. Under the California provisions, a party candidate was required to demonstrate that he had not been registered with another party for an even longer period of time than an independent candidate was required to demonstrate his disaffiliation. It was significant for the Storer court that the requirement posed no greater burdens on independent candidates than on party candidates.
While approving the disaffiliation requirement, however, the court in Storer remanded the case for factual findings on the question of whether certain other provisions operated to make running as an independent candidate unduly burdensome. In Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the court had struck down an Ohio statutory scheme which made no provision at all for independent candidates to have their names placed on the ballots. Reaffirming that holding, the Storer court concluded: "[W]e perceive no sufficient state interest in conditioning ballot position for an independent candidate on his forming a new political party as long as the State is free to assure itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support." 415 U.S. at 746, 94 S.Ct. at 1287. (Emphasis supplied.)
The State does indeed have a compelling interest in ensuring that candidates who run for election as "Independents" are truly independent, an interest recognized by other courts addressing the issue since Storer. Mississippi State Board of Election Commissioners v. Meredith, 301 So.2d 571 (Miss.1974); McInerney v. Wrightson, 421 F.Supp. 726 (D.Del.1976); Maddox v. Wrightson, 421 F.Supp. 1249 (D.Del.1976); MacBride v. Askew, 541 F.2d 465 (5th Cir. 1976).
Our analysis next requires us to consider whether the challenged restriction goes beyond *654 what the State's compelling interest actually requires. See MacBride v. Exon, 558 F.2d 443, 448 (8th Cir. 1977). Because the statute considered here burdens the exercise of fundamental rights to associate for political purposes, it is invalid unless it actually serves the State's compelling interest and acts in the least drastic way to accomplish that purpose. Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976); Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). See McCarthy v. Austin, 423 F.Supp. 990, 997 (W.D.Mich.1976).
Plaintiffs argue that the restriction here does not actually further the State's interest in assuring the independence of "Independent" candidates. They compare this statute, which completely isolates political parties from independent candidates, with the "disaffiliation provision" approved in Storer. The Minnesota statute makes no requirement that an independent candidate establish that he is not a member of a political party; instead, it requires that such a candidate, regardless of his political affiliations, not "seek" or "accept" any party's support for his candidacy. Plaintiffs urge that "support" cannot be equated with "affiliation," and that by prohibiting independent candidates from seeking such support, Minnesota has gone beyond what its legislative interest requires. In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court upheld federal limitations on campaign contributions from any one contributor but never sanctioned an outright ban. Though the contribution itself, not its size, serves as a statement of support for the candidate, the court noted that "contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." 424 U.S. at 21, 96 S.Ct. at 636.
The State argues that Minn.Stat. § 202A.22, subd. 1(m) (1978) is necessary if the "Independent" label and party labels are to "stand for something" in the eyes of the voters.[2] In our view, the disclosure and reporting requirements of Minn.Stat. ch. 10A (1978) ensure that the public will not be misled by a candidate who holds himself out as an independent but is actually supported by a political party. The party itself would have a positive interest in communicating the fact of an endorsement. The Buckley court approved of reporting and disclosure requirements similar to these because they provide voters with necessary information regarding the source of candidate funding and, therefore, allow voters to "place each candidate in the political spectrum."[3] 424 U.S. at 66, 67, 96 S.Ct. at 657. We are persuaded that the State's argument gives voters too little credit. As the trial court noted: "This Court * * * has a deep respect for the ability of voters to ferret out the truth. The public is well able to ascertain sources of support for independent candidates and use such information accordingly at the polls."
The statute challenged here has the salutary purpose of preventing subterfuge and voter confusion. This goal must be accomplished, however, without restricting the First Amendment right of a truly independent candidate to seek support wherever he or she can find it. We cannot construe "accept" as "active affirmative embracing" of support from a political party, as the State urges.[4] To do so would be to construe the statute out of existence.
*655 The Minnesota statute, unlike the California statute challenged in Storer v. Brown, discriminates against independent candidates. Party candidates may seek and accept support from any quarter. Under the United States Constitution, government is not permitted to restrict the quantity of "political communication and association by persons, groups, candidates and political parties." Buckley v. Valeo, 424 U.S. at 18, 96 S.Ct. at 634. In Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), election laws under which a non-party nominee could get his name on the ballot only by filing a petition signed by five percent of the registered voters withstood constitutional attack because these laws did not in fact "operate to freeze the political status quo":
Any political organization, however new or however small, is free to endorse any otherwise eligible person as its candidate for whatever elective public office it chooses. So far as the Georgia election laws are concerned, independent candidates and members of small or newly formed political organizations are wholly free to associate, to proselytize, to speak, to write, and to organize campaigns for any school of thought they wish.
403 U.S. at 438, 91 S.Ct. at 1974.
In Buckley, the court held, inter alia, that a statutory ceiling on personal campaign expenditures was an unconstitutional interference with First Amendment rights, absent the quid pro quo of public "matching funds." The court concluded emphatically:
In the free society ordained by our Constitution it is not the government, but the people  individually as citizens and candidates and collectively as associations and political committees  who must retain control over the quantity and range of debate on public issues in a political campaign.
424 U.S. at 57, 96 S.Ct. at 653. The Minnesota statute challenged here is an attempt by the legislature to exercise control over the "quantity and range" of political expression by independent candidates and local parties. As respondent has noted, the statute not only prescribes qualifications for ballot access but also seeks to control the speech, association and conduct of independent candidates and prospective supporters during the campaign. It thus unconstitutionally restricts First Amendment rights of expression and association. Enforcement of Minn.Stat. § 202A.22, subd. 1(m) (1978) is hereby enjoined.
Affirmed.
AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.
YETKA, Justice (dissenting).
I strongly believe that Minn.Stat. § 202A.22, subd. 1(m) (1978), which requires that political candidates running as "independents" be truly independent, is a constitutional exercise of the state's authority to prevent deception of the voters and to promote honesty and integrity in government. I therefore respectfully dissent.
For 60 years in this state, from 1913 to 1973, the election laws were subverted as legislators ran on nonpartisan ballots. Immediately after the elections, Republicans met and organized as conservatives and DFL'ers met and organized as liberals to elect presiding officers in the legislature. In 1973, the legislature commendably halted this process by requiring all legislators to run on a party ballot. That act only recognized what had been the custom since statehood. Political parties have existed in the United States since the mid-1790's when President Washington left office, and the political party system has served the nation well.
*656 Even under a partisan ballot system, however, there are still candidates who choose to run as independents. The statute in question here is an attempt by the legislature to insure that such candidates are "truly independent," Storer v. Brown, 415 U.S. 724, 746, 94 S.Ct. 1274, 1286, 39 L.Ed.2d 714 (1974), to prevent frauds against voters by party candidates running as independents.
The legislature clearly has the authority to pass laws to prevent the deception of voters. Indeed, this is one of the basic objectives of our election code. This court stated in Foley v. Donovan, 274 Minn. 501, 503, 144 N.W.2d 600, 603 (1966):
Our election laws are bottomed on the theory that no candidate for an office ought to be given an unfair advantage over another and the people ought to be permitted to know whom and what they are voting for.
We have noted previously that party affiliation is the single most important factor in voter choice. Ulland v. Growe, 262 N.W.2d 412, 414 (Minn.), cert. denied, 436 U.S. 927, 98 S.Ct. 2822, 56 L.Ed.2d 770 (1978). Therefore, it is important for the legislature to insure that party affiliations shown on the ballot be truthful, including the "independent" assertion of nonaffiliation, see Shaw v. Johnson, 311 Minn. 237, 247 N.W.2d 921 (1976).
The majority acknowledges that this is a legitimate state interest. Such a conclusion is compelled by Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). In that case, a California statute prohibited any candidate from running as an independent where at any time during the preceding year he had been a registered member of a political party. The U.S. Supreme Court upheld that statute. I see no reason why the legislature could not determine that one factor, namely accepting support from a party, is a more significant indication of nonindependence than mere party membership. That is, in fact, a totally rational decision; endorsements, use of party funds, and access to party mailing lists are clearly stronger indications that a candidate is truly a party candidate than the mere fact that the candidate is a party member. Thus, I see no constitutional infirmity in the method the legislature has chosen to insure that independent candidates are "truly independent."
It is the responsibility of this court not to strain for grounds to hold a statute unconstitutional. On the contrary, the presumption is that a statute is constitutional and this court is required to place a construction on the statute that will find it so if at all possible. Miller Brewing Co. v. State, 284 N.W.2d 353 (Minn.1979); City of Duluth v. Sarette, 283 N.W.2d 533 (Minn.1979). See also Minn.Stat. § 645.17(3) (1978). The Attorney General has urged that the statute be narrowly construed to assure its constitutionality. He argues that the term "accept" be construed as prohibiting only active acceptance of party support by the candidate and not mere passive receipt of unsolicited support. Federal statutory limitations on campaign contributions which treated "authorized or requested" expenditures as contributions, but not unauthorized expenditures, were held to be constitutional in Buckley v. Valeo, 424 U.S. 1, 23-38, 46-47 n. 53, 96 S.Ct. 612, 636-644, 647-648 n. 53, 46 L.Ed.2d 659 (1976). The Attorney General urges that a similar distinction was intended by the legislature in this statute.
The Attorney General's position has great merit. The legislature intends that the terms of statutes be interpreted according to their common usage, and in accordance with constructions placed on other statutes previously. Minn.Stat. §§ 645.08(1), 645.17(4) (1978). The term "accept" means:
To receive with approval or satisfaction; to received with intent to retain. * * Means something more than to receive, meaning to adopt * * *.
Black's Law Dictionary 12 (5th Ed. 1979). In Roberts v. Chicago, St. Paul, Minneapolis & Omaha Railway, 48 Minn. 521, 531, 51 N.W. 478, 480 (1892), aff'd. mem., 164 U.S. 703, 17 S.Ct. 992, 41 L.Ed. 1183 (1896), we stated: "The duty of the court, declared in the statute, to `accept' the petition and bond * * * implies that the court is to *657 act upon them * * *." (Emphasis in original.) I would interpret this statute in the same manner. The legislature was aware in 1978 of the 1976 decision in Buckley v. Valeo and must be presumed to have intended the statute to be constitutional. See Minn.Stat. § 645.17(3) (1978).
Under this interpretation, an independent candidate would not be in violation of the statute if a party, acting on its own initiative, chooses to use funds, telephone banks, or advertising or to distribute literature to support him. In addition, the Attorney General concedes that the statute does not bar an independent candidate from seeking or accepting support from individual active party members. I therefore fail to see any impediment whatever to the activities of political parties or active party members that could in any way be construed as inimical to their political activities or to the existence of the parties.
The single limitation on political parties is that a person running as an independent cannot take steps to seek or accept by affirmative act a political party's support, but why should a candidate be able to do so? Why should a truly independent candidate who has chosen not to run as a party candidate be entitled to solicit support and still call himself an independent? To say that such action cannot constitutionally be regulated is to say that the constitution requires the states to permit the deception of voters, with which I cannot agree.
The majority argues that the statute operates to insure that independents are independent, but is deficient in not also insuring that Democrats are true Democrats, Republicans true Republicans, and so on. This seems to me to be an argument merely that the legislature may not have gone far enough in prohibiting voter deception. However, the parties themselves have control over the selection of their candidates and can reject candidates who do not follow party views. The legislature could therefore rationally decide that no regulation is necessary as to such candidates.
If a candidate wants to be an independent candidate, he should be given every opportunity to file and run as one and our laws protect that right. However, the state has a right to require that such a candidate be truly an independent candidate. Requiring independent candidates to affirm that they will not seek or accept party support fulfills the state's compelling interest in verifying that an independent candidate is "truly independent," as recognized in Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). It also tends to prevent the candidate from becoming obligated to a political party. I believe this statute construed as proposed by the Attorney General is constitutional, and I would therefore reverse the district court.
NOTES
[1] No independent candidate is a party to this lawsuit. The State has raised no serious challenge to plaintiffs' standing no challenge the statute at issue, and we are satisfied that plaintiffs have alleged that the challenged statute injures them, and that the interests they seek to protect are within the zone of interests protected by the Constitution. See CBS, Inc. v. Young, 522 F.2d 234 (6th Cir. 1975) (though not specifically named in the order, broadcasting network had standing, as a member of the press, to challenge a court order requiring that all parties concerned with highly publicized litigation refrain from discussing case with news media); Cousins v. Wigoda, 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975) (interference with right of political parties to associate is an interference with rights of the party's adherents).
[2] The "party labels" argument is somewhat curious. The DFL Party and the Independent-Republican Party are free under the section as written to endorse and financially support Republican and DFL candidates, respectively, but not Independent candidates.
[3] The Buckley court observed, further: "Major parties encompass candidates of greater diversity. In many situations the label `Republican' or `Democrat' tells a voter little. The candidate who bears it may be supported by funds from the far right, the far left, or any place in between on the political spectrum." 424 U.S. at 70, 96 S.Ct. at 659.
[4] The State argues that such a construction would eliminate any constitutional infirmity, noting that language forbidding such affirmative conduct which implies collaboration between the candidate and the party has withstood constitutional attack in other campaign finance laws. See Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The State has not, however, pointed to specific statutory language which indicates that this distinction, between permissible passive receipt of support and impermissible affirmative action, was intended by the Minnesota Legislature, nor has it suggested how an independent candidate or a political party might know which support is permissible and which is impermissible.